Hillsborough-northern judicial district
No. 2004-092

THE STATE OF NEW HAMPSHIRE

v.

NICHOLAS CHAMPAGNE

Argued: May 18, 2005
Opinion Issued: July 15, 2005

*Kelly A. Ayotte*, attorney general (*Susan G. Morrell*, senior assistant attorney general, and *Jonathan V. Gallo*, assistant attorney general, on the brief, and *Ms. Morrell* orally), for the State.

*Patrick Shanley*, of Tewksbury, Massachusetts, by brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Nicholas Champagne, is charged with one count of attempted possession of five pounds or more of the controlled drug marijuana with the intent to sell, while released on cash bail, *see* RSA 629:1 (Supp. 2004); RSA 318-B:2, :26 (2004); RSA 597:14-b (2001); three counts of receiving stolen property, *see* RSA 637:7 (Supp. 2004); one count of theft by unauthorized taking, *see* RSA 637:3 (1996); and one count of conspiracy to commit the crime of theft of property valued at over $1,000.00, *see* RSA 629:3 (Supp. 2004); RSA 637:1 (1996). The State appeals from a pre-trial order of the Superior Court (*Conboy*, J.), *see* RSA 606:10, II (2001), arguing that the court erred in: (1) denying the State's motion to strike the defendant's notice of affirmative defense of voluntary renunciation; (2) granting the defendant's motion to suppress evidence seized from the basement of a house in which his apartment was located; and (3) granting the defendant's motion to suppress evidence seized during a second search. We affirm in part, reverse in part and remand.

I

The trial court found the following facts after an evidentiary hearing on the defendant's motions to suppress. On November 26, 2001, Michael Coraluzzo, a New Hampshire State Trooper assigned to the narcotics investigation unit, spoke with a confidential informant (CI), who told the trooper that during an encounter with the defendant in Manchester, the defendant had stated that he was interested in purchasing ten pounds of marijuana for the purpose of reselling it. Based on the CI's information, the trooper commenced an investigation of the defendant for drug activity.

During the course of his investigation, Trooper Coraluzzo conducted several surveillance operations of the residence located at 24 Cypress Street in Manchester, where he believed the defendant resided. Also, on December 4, 6 and 10, the CI, under the trooper's guidance, engaged in recorded conversations with the defendant regarding the defendant's interest in purchasing marijuana. During those conversations, the defendant continued to express interest in purchasing marijuana from the CI, and the two negotiated a price. They also discussed the date on which the transaction was to occur, and eventually agreed on December 7, 2001.

The transaction did not occur on December 7, so the CI, following instructions from the State Police, contacted the defendant on December

10 to reschedule. The State Police had directed the CI to convince the defendant to conduct the transaction in a public place; however, the defendant repeatedly insisted that the CI bring the marijuana to his residence. The CI and the defendant met in front of the 24 Cypress Street residence on December 10, and the defendant told the CI he had the money for the drugs upstairs in the house. The defendant then attempted to persuade the CI to go inside the residence to conduct the transaction. The CI refused, and suggested that they conduct the transaction at a nearby convenience store. When the defendant would not agree, the CI left the area. At that point, Trooper Coraluzzo ceased his surveillance and left to complete a search warrant application.

Later that evening, the defendant left the 24 Cypress Street residence in a Nissan Pathfinder, and was arrested shortly thereafter on Interstate 93 by a State trooper. At approximately 12:41 a.m. the next day, a judge from the Manchester District Court approved Trooper Coraluzzo's application for a search warrant. The warrant authorized the police to seize evidence of ownership of the premises at 24 Cypress Street and drug trafficking, as well as drug paraphernalia.

Trooper Coraluzzo, along with Sergeant Quinn, New Hampshire State Police Field Supervisor in the narcotics investigation unit; Sergeant Moore of the Manchester Police Department, in charge of the special investigations unit; and Sergeant Mosely of the patrol division of the Manchester Police Department, executed the search warrant. Upon the officers' arrival at the residence, the defendant's mother reviewed the warrant and informed the police that the house was divided into two apartments. She explained that she lived in the first floor apartment and the defendant lived in the second floor apartment.

The officers searched the defendant's second-floor apartment and then asked the defendant's mother if they could search the garage. The defendant's mother replied that they could search the garage, but stated that they would have to exit the front door to access the garage from the outside instead of through the basement. Nevertheless, the officers proceeded downstairs to the basement. They entered an area of the basement that appeared to be used as a workspace, and observed, among other things, a Honda motorcycle that seemed to be missing parts. Trooper Coraluzzo walked closer to the motorcycle and observed its vehicle identification number (VIN), which he read aloud to the other officers in the basement. Sergeant Mosely checked the VIN number and learned that the motorcycle had been reported as stolen.

After searching the basement, the officers entered the garage. They observed two motorcycles that appeared to have been repainted, an assortment of motorcycle parts and a pneumatic paint sprayer. Sergeant

Mosely checked the VIN numbers of the two motorcycles in the garage, but neither had been reported as stolen.

Before leaving the premises, the officers contacted the Traffic Division of the Manchester Police Department and requested that an officer respond to 24 Cypress Street. They did so because, during Trooper Coraluzzo's investigation, Sergeant Moore had learned that in addition to being investigated by the State Police for alleged drug activity, the defendant was under investigation by the Traffic Division for his suspected connection with stolen motorcycles in the Manchester area. Officer Piotrowski responded to the call and, upon his arrival at 24 Cypress Street, spoke with Sergeant Moore.

Sergeant Moore advised Officer Piotrowski that during a search for evidence of drug activity, officers had discovered various motorcycle parts and several motorcycles, one of which had been confirmed as stolen. Sergeant Moore and Officer Piotrowski then entered the house, and Sergeant Moore showed the officer the stolen motorcycle located in the basement. The two also went into the garage, where Sergeant Moore showed Officer Piotrowski the motorcycle parts and other motorcycles the officers had observed during their search. Officer Piotrowski then returned to the police department to prepare a search warrant application seeking authorization to search for and seize motorcycles, motorcycle parts and related items.

Later that day, Officer Piotrowski's application for a search warrant was approved and, thereafter, he and several other officers from the Manchester Police Department executed a second search of the residence located at 24 Cypress Street. As a result of the second search, officers seized three motorcycles, various motorcycle parts and paperwork pertaining to motorcycles.

The defendant was subsequently charged with one count of attempted possession of five pounds or more of the controlled drug marijuana with the intent to sell, while released on cash bail, as a result of his interactions with the CI. He was also charged with one count of receiving stolen property relating to a gun that was discovered in his bedroom during the first search of 24 Cypress Street, two counts of receiving stolen property relating to a motorcycle and motorcycle parts found in the garage at 24 Cypress Street, one count of theft by unauthorized taking pertaining to a motorcycle found in the garage at 24 Cypress Street, and one count of conspiracy to commit the crime of theft of property valued at over $1,000.00, based on allegations that the defendant agreed with another to "steel [sic] motorcycles, strip the parts off of same and dispos[e] of the stolen parts."

Thereafter, the defendant filed a notice of the affirmative defense of renunciation in relation to the charge of attempted possession of marijuana with the intent to sell. He also moved to suppress certain items obtained during the first search for evidence of drug activity, asserting, among other things, that certain items were not found within the area described in the warrant. In a separate motion, the defendant sought to suppress items relating to motorcycle theft on the basis that the first search warrant did not authorize the police to search for such items, and the police did not have consent to search the area where the items were found. He argued that, consequently, "any evidence taken from the premises involving any motorcycle, motorcycle parts, evidence of working on motorcycles and any evidence related thereto" should be suppressed.

The trial court held a two-day evidentiary hearing on the motions to suppress and one day of argument on these and other pending motions, after which it issued a written order. As to the State's motion to strike the defendant's notice of affirmative defense, the court ruled that "the defendant may raise the affirmative defense of renunciation at the trial" but specified that its ruling was "without prejudice to any trial motions regarding the asserted affirmative defense (*e.g.*, whether the jury will be instructed concerning the defense)." With respect to the defendant's motion to suppress evidence obtained during the drug search, the court ruled, in relevant part, that "the search warrant did not authorize the search of the basement" and that because the defendant's mother did not consent to the search and the State failed to prove "that the search was valid pursuant to any other exception to the warrant requirement," the "results of the search of the basement must therefore be suppressed as fruit of the poisonous tree." Finally, with respect to the defendant's motion to suppress evidence obtained during the second search for motorcycles, motorcycle parts and evidence relating thereto, the court ruled, in pertinent part, that

> excluding the evidence obtained from the unauthorized first search of the basement—there is insufficient evidence to support the second warrant. Accordingly, the defendant's Motion to Suppress is GRANTED to the extent it seeks to suppress items the police obtained during the execution of the second warrant.

This appeal followed.

## II

The State first argues that the trial court erred in denying its motion to strike the defendant's notice of affirmative defense of renunciation. We disagree.

After the defendant filed his notice of affirmative defense, the State moved to strike it on two grounds: (1) that the notice was untimely; and (2) that contrary to the requirement in Superior Court Rule 101 that a notice set forth the grounds of the defense, the defendant's notice "set[ ] forth no facts upon which he could meet his burden to establish by a preponderance of the evidence that he made a complete withdrawal of his criminal purpose or that he did so voluntarily as required by [RSA] 629:1 (III)." The trial court denied the State's motion and allowed the defendant to raise his defense at trial despite the late notice, *see* SUPER. CT. R. 101. The court further ruled that the notice "sufficiently apprised" the State of "the facts supporting the defense."

In addition to containing rulings on various pending motions, the order contained factual findings based upon the evidentiary hearing on the motions to suppress, including a finding that "[t]he [controlled drug] transaction did not occur because the [defendant and the CI] were not able to agree upon a location to conduct the transaction." The State unsuccessfully moved to reconsider the ruling on the State's motion to strike the defendant's notice of affirmative defense, arguing that based upon the above finding, "the defendant's alleged renunciation was neither voluntary nor complete." On appeal, the State presents the same argument contained in its motion for reconsideration; namely, that "[t]he facts adduced at the evidentiary hearing did not support the defendant's claim [of renunciation]" and, therefore, "the defense of voluntary renunciation was unavailable to the defendant as a matter of law."

The Criminal Code specifies voluntary renunciation as an affirmative defense to "attempt" crimes. *See* RSA 629:1, III(a), (b) (1996). Superior Court Rule 101 sets forth the notice requirement for renunciation and other affirmative defenses:

> If a defendant intends to claim any defense specified by the Criminal Code, a notice of such intention *setting forth the grounds therefor* shall be filed with the Court, with a copy of same going to the prosecution, in accordance with the time limitations in Rule 98 or within such further time as the Court may order for good cause shown. If the defendant fails to comply with this rule, the Court may exclude any testimony relating to such defense or make such other order as the interest of justice requires.

(Emphasis added.) As with any other question of law, we review the trial court's interpretation of the Superior Court Rules *de novo*. *Cf. Franklin v. Callum*, 146 N.H. 779, 781 (2001) (reviewing trial court's interpretation of Rules of Professional Conduct *de novo*).

■ The defendant's notice of affirmative defense stated, in pertinent part:

> The evidence based upon the [S]tate's investigative file indicates that when the confidential informant arrived at the defendant's house the defendant voluntarily refused to proceed forward with any transaction. The evidence demonstrates that the defendant withdrew from any participation in the potential action by walking away and renouncing any further discussions, negotiations or actions.
>
> The evidence based on the [S]tate's investigative file indicates only verbal discussions concerning the possibility of the defendant purchasing controlled drugs from the [S]tate's informant.
>
> No money exchanged hands. No drugs exchanged hands. *The defendant withdrew from any further negotiations before any negotiations were complete.* He walked away and renounced any further participation.
>
> These and other facts as would be presented at trial provide an affirmative defense to the defendant.

We conclude that the defendant's notice satisfied Rule 101. Rule 101 expressly requires that a notice of affirmative defense "set[ ] forth the grounds therefor," which is precisely what the notice in this case did.

The State essentially asks us to read into the requirement that a defendant "set forth the grounds therefor" the added proviso that the trial court test the validity of such grounds against any factual findings it makes in the course of pretrial proceedings. We decline to do so. The clear language of the rule is not susceptible of such an interpretation, and the State does not refer to any authority that convinces us otherwise. Accordingly, we affirm the trial court's denial of the State's motion to strike the defendant's affirmative defense.

### III

Next, under both the State and Federal Constitutions, the State challenges the trial court's ruling that the search of the basement at 24 Cypress Street in connection with the drug investigation was unlawful. We will consider the State's arguments first under the State Constitution, citing to federal authority for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983). When reviewing a trial court's ruling on a motion to

suppress, we defer to its findings of fact but review its conclusions of law *de novo. State v. Litvin,* 147 N.H. 606, 607 (2002).

In arguing that the trial court erred in ruling that the search of the basement was unlawful, the State contends that the trial court misapplied *State v. Cote* to the facts of this case. In *Cote,* we considered the lawfulness of the search of a basement where the warrant described the place to be searched as "72 1/2 West Hollis Street, Nashua, New Hampshire doing business as Rosie's Rusty Nail, situated on the first floor of a three story building." *State v. Cote,* 126 N.H. 514, 518 (1985) (quotation omitted). We began our analysis by explaining two lines of cases that had evolved from the general standard applicable to searches: "that warrants describe with particularity the places that may be searched . . . such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." *Id.* at 523 (quotation omitted).

We explained that in the first line of cases, the "language identifying one dwelling unit has been held to limit the permissible search to that unit alone," based upon the premise that "separate dwelling units are usually occupied by different people." *Id.* at 523-24. The general rule emerging from the first line of cases "limit[s] the risk of violating one person's privacy on the authority of a warrant directed against another." *Id.* at 524. As to the second line of cases, we explained that they held "that the description in a warrant of a dwelling or commercial unit extends the scope of the warrant to structures and spaces that are exclusively appurtenant to that unit, at least in the absence of any expressly limiting language." *Id.* We noted:

> The common feature of the cases in this second group is that the areas in question were not separate dwelling or commercial units. In such instances, the same person will very probably occupy both the premises as described in the warrant and the secondary areas in question. The privacy interests of others do not, therefore, demand a narrow construction of the warrant's terms.

*Id.* at 524-25. We characterized these lines of cases as containing "two complementary general rules for interpreting a warrant's description of the place to be searched. As between different dwelling or commercial units, the description is limiting language, but as between a given unit and its own appurtenant spaces or buildings the description is merely identifying." *Id.* at 525.

With these complementary general rules in· mind, we upheld the trial court's ruling that the search of the basement was lawful, concluding that the facts of the case brought the search within the second line of cases. *Id.*

Specifically, we noted that the defendant "had control of a padlocked door opening on the basement stairs, and there [was] no indication that anyone else used the basement area." *Id.* Consequently, we held that "the warrant's description of the first floor premises of the Rusty Nail identified the core premises and authorized the search of the basement that was appurtenant to those premises." *Id.*

In this case, the trial court distinguished the search of the basement at 24 Cypress Street from the search of the basement in *Cote*:

> The situation in this case is markedly different from that in *Cote* because the defendant was not the only one who used the basement at the time of the search and the basement is not appurtenant to the defendant's apartment. The defendant has no direct access to the basement from his apartment. In order to get into the basement, the defendant must go inside [his mother's] apartment to gain access to a stairway that extends from her apartment to the basement or through a stairway [to] the garage. The State has not established the extent or frequency of the defendant's use of the basement nor has the State established that the defendant had the exclusive use of any particular area of the basement. However, the *Cote* Court does not appear to have considered an occupant's frequency of use as a factor. Instead, it appears that the Court focused on the issue of whose privacy interests would be impacted by the search. In this case, unlike the situation in *Cote*, the defendant did not have exclusive use of the basement. [The defendant's mother], the title owner of the property, indicated that she uses the basement at times for various things, including laundry and storage. The testimony also indicates that, at the time the search took place, [the defendant's mother] was using the basement as additional living space, providing a place for her daughter and her grandchildren to stay during their visit. The court finds this situation distinguishable from that in *Cote* because the defendant is not the only individual who uses the basement and [his mother] also had a privacy interest in the basement at the time of the search. Consequently, the terms of the search warrant must be narrowly construed to allow the police to search only in those areas in which the defendant's privacy would be affected, namely his apartment, and the other areas that the warrant gave the police explicit authorization to search, namely the garage, outbuildings and shed-like structures on the property, and the defendant's 1999 red Nissan Pathfinder. *See Cote*, 126 N.H. at 523-25. The court

finds that the search warrant did not authorize the search of the basement.

The State contends that the trial court misapplied the law as stated in *Cote* by analyzing the search of the basement under the line of cases that pertains to searches of separate dwelling units. The State argues that the trial court's incorrect analysis is evidenced by its concern over whether anyone other than the defendant used the basement and had a privacy interest in the area "as if [the basement] were located in a separate unit or structure not described in the warrant." The State posits that the trial court should have analyzed the search under the law relating to "area[s] within a single unit that [were] not particularly described as being within the unit." We reverse the trial court's ruling on the lawfulness of the search of the basement, not because we believe that the trial court erred in analyzing the search under the wrong line of cases discussed in *Cote*, but because we disagree with the trial court's attempt to distinguish this case from *Cote*.

In this case, the warrant described the area to be searched as:

> *24 Cypress Street, Manchester, N.H., the residence of Nicholas Champagne, is described as a brown two story, wooden structure with an attached garage.* There is a paved driveway positioned on the southerly side which leads to the attached garage. There is one front entrance. This attachment includes any outbuildings or shed-like structures on the property as well as the following vehicle known to be operated by Champagne[:] New Hampshire dealer registration 138924[,] 1999 Red Nissan Pathfinder.

(Emphasis added.) In *Cote*, the warrant described the area to be searched as "72 1/2 West Hollis Street, Nashua, New Hampshire doing business as Rosie's Rusty Nail, *situated on the first floor of a three story building.*" *Cote*, 126 N.H. at 518 (quotation omitted; emphasis added). The emphasized language highlights the key distinction between the search warrant in this case and that in *Cote*. Here, the warrant identified the area to be searched as "the residence of Nicholas Champagne" and specified that to be the entire dwelling house located at 24 Cypress Street: "a brown two story, wooden structure with an attached garage." In *Cote*, however, the area to be searched was identified as "72 1/2 Hollis Street," and was specified as being "Rosie's Rusty Nail," located on "the first floor of a three story building." Thus, unlike the warrant in this case, the warrant in *Cote* did not specify the area to be searched as the entire residential or commercial structure located at a particular address.

Where the area to be searched is identified as being a particular address, and is followed by a description thereof that either expressly or impliedly includes the entire dwelling structure located at that address, courts have held that the area police are permitted to search includes a garage, *see State v. Brochu*, 237 A.2d 418, 422-23 (Me. 1967) (warrant specified area to be searched as "premises . . . at 20 Forest Street" and "known as the dwelling of [the defendant]") and a shed, *see Fine v. United States*, 207 F.2d 324, 324-25 (6th Cir. 1953), *cert. denied*, 346 U.S. 923 (1954) (warrant specified area to be searched as "the premises known as the Harve Fine residence and being a one story white frame dwelling with green shingle roof . . . of about four rooms"). These courts reasoned that the identification of the area to be searched as a particular address, followed by a description of the entire dwelling structure thereon, does not limit the scope of the search to the dwelling structure. *See Brochu*, 237 A.2d at 422-23; *Fine*, 207 F.2d at 324-25. Rather, such references and descriptions include "the dwelling house proper, the garage, and any other outbuildings within close proximity of the house proper that one normally associates with and includes within the word 'house' or 'premises.'" *State v. Roach*, 322 So. 2d 222, 226 (La. 1975), *superseded on other grounds as recognized by State v. Serrato*, 424 So. 2d 214 (La. 1982).

In *United States v. Palmisano*, the court considered the lawfulness of the search of a basement pursuant to a warrant that identified the area to be searched as "[t]he premises known as 346 North Broadway, Milwaukee, Wisconsin," and specified it as being "a single story brick structure, housing a front tavern area which contains a bar, pool table, and related equipment, and a back room immediately adjacent to the tavern area." *United States v. Palmisano*, 386 F. Supp. 599, 599 (E.D. Wis. 1974) (quotation omitted). The court ruled that the search was lawful, reasoning that

a fair reading of this warrant indicates that a search of the entire premises at 346 North Broadway was authorized and was not to be limited to the front and back rooms; specific reference to those areas in the search warrant and in the Hunt affidavit was for the purpose of more fully identifying the premises and was not intended to reduce the area to be searched.

*Id.* at 599-600. Here, as in *Palmisano*, a fair reading of the warrant authorized a search of the entire premises located at 24 Cypress Street and did not reduce the area to be searched from the entire premises to the defendant's second floor apartment and the garage. To conclude otherwise would be to ignore the reality that one typically associates a basement

with, and includes it within, the word "residence." *See Roach*, 322 So. 2d at 226.

■ The defendant maintains that the trial court correctly ruled that the search of the basement was unlawful because he did not have exclusive use of the basement, and the basement was not directly appurtenant to his apartment. However, these matters are not dispositive where, as here, the search warrant authorized police to search "the residence" of the defendant, specified as being the entire dwelling unit located at 24 Cypress Street, rather than specifying "the residence" as being the second floor apartment.

■ When a search warrant authorizes the search of a "residence" or a certain "premises," specified as being an entire dwelling unit, the underlying determination that probable cause exists to justify the search protects the privacy interests of others who may inhabit the dwelling and use its common areas. In such instances, the additional analysis of whether the area to be searched is in a defendant's exclusive control or directly appurtenant to the particular area where the defendant resides is unnecessary. *Compare Com. v. Scala*, 404 N.E.2d 83, 89 (Mass. 1980) (warrant authorizing search of "entire apartment located on the second floor" included third floor attic where attic was directly adjacent to second floor apartment and no other apartments in building had use of attic), *and Rainey v. State*, 246 N.W.2d 529, 533-36 (Wis. 1976) (where search warrant authorized search of "entire first floor premises of shoe shine parlor formerly known as Hollywood Hosiery at 1414 West Vliet Street," search of balcony lawful because balcony was directly adjacent to first floor premises and had no connection to second floor dwelling (quotation and brackets omitted)), *with State v. Woolsey*, 802 P.2d 478, 479 (Haw. 1990) (search of defendant's bedroom lawful where search warrant authorized police to search "entire premises and residence of 3803 Manamana Road" even though various others occupied premises and affidavit in support of warrant specified exact bedroom of other occupant where contraband transactions occurred), *and State v. Hymer*, 400 So. 2d 637, 638-39 (La. 1981) (search of defendant's locked bedroom in dwelling occupied by several others lawful where search warrant authorized search of "2101 South Grand" and there was no indication that defendant's bedroom was inaccessible to other occupants). *See Poyner v. Com.*, 329 S.E.2d 815, 824 (Va.) (search warrant not defective where it authorized search of entire house even though defendant rented one room in house because defendant had access to all other rooms in house), *cert. denied*, 474 U.S. 865, 888 (1985).

Because the Federal Constitution affords no greater protection in this context, we reach the same conclusion under the Federal Constitution as we do under the State Constitution. *See Cote*, 126 N.H. at 521-22, 523-25 (analyzing case under State constitutional requirement that warrants describe with particularity the place to be searched); *Brochu*, 237 A.2d at 420, 422 (warrant authorizing search of "the premises known as the dwelling of Armand A. Brochu" included garage under Fourth Amendment (quotation omitted)). Accordingly, we reverse the trial court's ruling that the search warrant did not authorize police to search the basement.

## IV

 Finally, the State argues that the trial court erred in ruling that items seized pursuant to the second search warrant must be suppressed. We agree. The trial court based its ruling upon its conclusion that the search of the basement during the execution of the first search warrant was unlawful. Specifically, the trial court noted that because it "found that the search of the basement was illegal," it could not consider "those portions of the affidavit relating to the information [officers] obtained as a result of the initial search of the basement" in determining whether the affidavit in support of the second search warrant established probable cause. Because the search of the basement was lawful, however, the trial court should have considered the entire affidavit in support of the second search warrant to determine whether probable cause for the second search existed. Accordingly, we reverse the trial court's ruling as to evidence seized pursuant to the second search warrant.

> *Affirmed in part; reversed in part; and remanded.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.