Strafford
No. 2005-122

THE STATE OF NEW HAMPSHIRE

v.

DANIEL FICHERA

Argued: February 22, 2006
Opinion Issued: June 9, 2006

*Kelly A. Ayotte*, attorney general (*Robert S. Carey*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Daniel Fichera, was convicted in Superior Court (*Mohl*, J.) of attempted murder, *see* RSA 629:1 (Supp. 2005); RSA 630:1-a (1996), first degree assault, *see* RSA 631:1 (1996); kidnapping, *see* RSA 633:1 (Supp. 2005), and criminal threatening, *see* RSA 631:4 (Supp. 2005). We reverse and remand.

The jury could have found the following facts. In May 2003, the defendant and Monica King-Fichera separated after a seven-year relationship and one year of marriage. Prior to their separation, they lived in Milton, and jointly owned five acres of undeveloped land off Piggott Hill Road in Milton. Access to the land was through a neighbor's driveway and a trail. After the separation, King-Fichera moved to Lebanon, New Hampshire, and the defendant remained in Milton.

The defendant subsequently contacted King-Fichera and told her that their neighbor had agreed to a "variance," which would give them access to the land off Piggott Hill Road. King-Fichera agreed to meet with the

defendant and the neighbor to reach an agreement concerning access rights.

On October 28, 2003, King-Fichera met the defendant in Milton, and they drove together to the Piggott Hill Road property. After they arrived, they sat at a picnic table and conversed cordially for about forty-five minutes. The defendant asked King-Fichera whether there was a possibility of getting back together and she said that she wanted to remain friends but did not think they were compatible as husband and wife. The defendant asked King-Fichera if she wanted to make love and she said no.

The defendant became angry and retrieved a shotgun. After a struggle, he forced King-Fichera to write a "confession" that she was an adulterous woman, and showed her a Bible with passages highlighted about adulterous women, divorce, revenge and prayer. The defendant threatened to spray King-Fichera with pepper spray. After unsuccessfully attempting to handcuff King-Fichera, the defendant threatened her with a large knife. He then hit her head several times with the butt of the shotgun and fired the shotgun into the air. The defendant told her that he intended to kill her and then himself.

As the sun was setting, King-Fichera told the defendant that she had to leave. He then aimed the shotgun at her chest and told her, "[W]oman, I love you so much, . . . but you're going to die." He fired the shotgun into King-Fichera's chest. Although wounded, King-Fichera managed to run away. The defendant followed, hitting her repeatedly with the butt of the shotgun. King-Fichera then lay down and "pretended to be comatose." After the defendant left, she got up and ran into the woods. The defendant followed, but could not catch her before she arrived at the home of a neighbor who called 911.

The defendant was indicted for attempted murder, first degree assault, kidnapping and criminal threatening. Prior to trial, he timely filed a notice of insanity defense. See RSA 628:2, III (1996). The defendant's "Notice of Defense of Insanity" stated: "Now comes [the defendant] . . . and respectfully notifies this Court and the State of his intention to assert the defense of insanity, as set forth in RSA 628:2, at trial." The State moved to strike the insanity defense and exclude testimony of defense experts on the issue of insanity.

The court conducted a pretrial hearing, at which the State argued that the defendant could not present an insanity defense because he had not proffered any evidence that his mental illness caused the charged conduct. The State argued that the jury should not be permitted to infer from testimony about the defendant's depression and post-traumatic stress disorder (PTSD) that his mental condition caused his conduct. The trial court agreed, ruling:

> In this case, the only evidence which the defendant can present is evidence that he suffered from PTSD and depression. None of the doctors upon which he relies . . . can offer any opinion on his condition at the time of the incident . . . . The defendant offers no evidence that indicates his PTSD and depression deprived him of the ability to form the specific intent for the crimes upon which he is indicted.
>
> . . . .
>
> Indeed, the defense counsel admitted at the hearing that no medical opinion evidence exists linking the defendant's conduct to a mental disease or defect . . . . By his own admission, the defendant can only present evidence as to one part of the analysis.

During trial, the defendant sought to cross-examine King-Fichera on what he characterized as her "mental health issue." The defendant sought to show that King-Fichera had been diagnosed with bipolar disorder and prescribed lithium. The defendant also sought to cross-examine King-Fichera about what he alleged was her belief in UFOs, her ability to communicate with spirits, that she possessed shamanistic powers and that divine intervention had reversed her tubal ligation. He argued that cross-examination on these matters was necessary to challenge King-Fichera's credibility and perception of reality. The State objected, arguing that the defendant had not presented any evidence of King-Fichera's allegedly abnormal beliefs and that it knew of no basis for the claims that King-Fichera was bipolar other than statements by the defense. The trial court sustained the State's objection and disallowed cross-examination.

On appeal, the defendant argues that the trial court erred by: (1) granting the State's pretrial motion to strike the defendant's insanity defense; and (2) barring him from cross-examining King-Fichera on issues related to her mental condition and beliefs. We address each argument in turn.

*I. Insanity*

At the outset, the defendant argues that the trial court erroneously rejected his insanity defense on the grounds that he presented no expert testimony in support of it. He argues that expert testimony is not required to present an insanity defense. In support of his position, he relies upon cases holding that insanity may be proven by lay witness testimony, and implying that expert testimony is not required. *See, e.g., State v. Hudson*, 119 N.H. 963, 966 (1979); *see also State v. Plante*, 134 N.H. 456, 460-62

(1991); *State v. Abbott,* 127 N.H. 444, 448-49 (1985); *State v. Rullo,* 120 N.H. 149, 152 (1980).

The State forthrightly concedes that a defendant may prove insanity by lay testimony and that expert testimony is not needed to support an insanity defense. It argues, however, that the trial court properly struck the insanity defense because the defendant "offered no evidence to show that a mental disease or defect caused his actions." The defendant argues that he did not need to proffer such evidence prior to trial. He contends that "[b]ecause [he] timely filed a Notice of Insanity Defense, he was entitled to the opportunity to present evidence relevant to that defense." He contends that "before trial, the court could not validly rule that [he] had failed to proffer sufficient lay witness testimony to support the insanity defense" and that "if he failed to produce sufficient evidence at trial, the court could then deny a jury instruction on the insanity defense."

 Insanity is an affirmative defense in New Hampshire. *Abbott,* 127 N.H. at 448. A defendant asserting an insanity defense must prove two elements: first, that at the time he acted, he was suffering from a mental disease or defect; and, second, that a mental disease or defect caused his actions. *See id.* The defendant has the burden of proving insanity by clear and convincing evidence. RSA 628:2, II (1996).

 There are four well-established principles relating to New Hampshire's unique insanity defense. *See State v. Jones,* 50 N.H. 369, 393-400 (1871). First, "sanity is a question of fact to be determined by the jury and . . . there is no test for determining whether a defendant is insane." *State v. Hall,* 148 N.H. 394, 399 (2002). Second, the test for insanity does not define or limit the varieties of mental diseases or defects that can form the basis for a claim of insanity, *State v. Plummer,* 117 N.H. 320, 327 (1977). Thus, both PTSD, *cf. State v. Place,* 126 N.H. 613, 615 (1983), and depression, *cf. State v. Mercier,* 128 N.H. 57, 65 (1986), may form the basis of an insanity defense. Third, whether a mental disease or defect caused the charged conduct is a question of fact for the jury. *Abbott,* 127 N.H. at 448; *State v. Pike,* 49 N.H. 399, 438 (1869), *overruled on other grounds by Hardy v. Merrill,* 56 N.H. 227, 234, 252 (1875). Fourth, a defendant asserting an insanity defense "is free to present *any and all* evidence of his mental state at the time of the crime." *Abbott,* 127 N.H. at 449 (emphasis added); *see also Plante,* 134 N.H. at 462. "It has long been recognized in this State that even the condition of insanity may be proved by lay witnesses," *Hudson,* 119 N.H. at 966, and "lay testimony has . . . been held to satisfy federal constitutional standards." *Id.* at 966-67 (*citing Moore v. Duckworth,* 443 U.S. 713, 714-15 (1979) (per curiam)).

■ The question of when a trial court may grant a pretrial motion to strike an insanity defense is an issue of first impression in New Hampshire. We will uphold the trial court's decision to strike an affirmative defense absent an unsustainable exercise of discretion. *See Exeter Hosp. v. Hall*, 137 N.H. 397, 400 (1993); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). Notice of an insanity defense is governed by RSA 628:2 (1996). RSA 628:2, III provides:

Evidence of insanity is not admissible unless:

(a) The defendant, within 10 days after entering his plea of not guilty or at such later time as the court may for good cause permit, notifies the court and the state of his purpose to rely on such defense; and

(b) Such notice is given at least 30 days before the scheduled commencement of trial.

RSA 628:2, III unambiguously requires a defendant to notify the court of his insanity defense within the statutory time limitations and permits a trial court to exclude evidence of insanity for failure to comply with these time requirements. It is undisputed that the defendant timely filed his notice of insanity defense. Thus, the defendant's notice of insanity defense complied with the requirements of RSA 628:2, III.

The trial court, however, did not base its order upon RSA 628:2, III, and, on appeal, neither the State nor the defendant specifically argues that RSA 628:2, III alone applies to the defendant's insanity defense. Instead, the parties assume that Superior Court Rule 101, which sets forth notice requirements for defenses generally, also applies to the defendant's insanity defense. The trial court appears to have found that the defendant did not set forth grounds for his defense as required by Rule 101. Therefore, we assume for purposes of this appeal that Rule 101 applies to the defendant's insanity defense and we address the sufficiency of the notice of insanity defense under that rule.

Rule 101 provides:

If a defendant intends to claim any defense specified by the Criminal Code, a notice of such intention setting forth the grounds therefor shall be filed with the Court, with a copy of same going to the prosecution, in accordance with the time limitations in Rule 98 or within such further time as the Court may order for good cause shown. If the defendant fails to comply with this rule, the Court may exclude any testimony relating to

such defense or make such other order as the interest of justice requires.

Superior Court Rule 98 requires that a defendant give the court and the State written notice of an affirmative defense "within thirty (30) calendar days after the entry of a plea of not guilty." SUPER. CT. R. 98 (B)(1).

We addressed the scope of the requirement that a defendant "set[] forth the grounds" of an affirmative defense in *State v. Champagne*, 152 N.H. 423, 428-29 (2005). There, the defendant told a police informant that he was interested in purchasing ten pounds of marijuana. *Champagne*, 152 N.H. at 424. The defendant and the informant scheduled a date for the sale to take place, but when they met on the scheduled date, they could not agree upon an exact location for the transaction to take place. *Id.* at 424-25. The defendant was later charged with attempted possession of five pounds or more of marijuana with the intent to sell. *Id.* at 426. Before trial, the defendant filed a notice that he intended to raise the affirmative defense of renunciation. *Id.* at 427; *see* RSA 629:1, III(a). The State filed a pretrial motion to strike the renunciation defense, which the trial court denied following an evidentiary hearing. *Champagne*, 152 N.H. at 428.

On appeal, we rejected the State's argument that the trial court erred by denying the motion to strike the renunciation defense because "the facts adduced at the evidentiary hearing did not support the defendant's claim of renunciation." *Id.* (quotation omitted). We concluded that the defendant's notice of his renunciation defense, which stated in pertinent part that "[t]he defendant withdrew from any further negotiations before any negotiations were complete [and] walked away and renounced any further participation," adequately set forth the grounds of his affirmative defense and thus satisfied Rule 101. *Id.* at 429 (quotation omitted). We stated:

> The State essentially asks us to read into the requirement that a defendant "set forth the grounds therefor" the added proviso that the trial court test the validity of such grounds against any factual findings it makes in the course of pretrial proceedings. We decline to do so. The clear language of the rule is not susceptible of such an interpretation, and the State does not refer to any authority that convinces us otherwise.

*Id.* Accordingly, we upheld the trial court's order denying the State's motion to strike the defendant's affirmative defense of renunciation. *Id.*

On appeal in this case, the State argues that the trial court properly struck the defendant's insanity defense because "the defendant offered no evidence that his actions were caused by a mental disease or defect." The

State's argument is essentially the same argument as it made in *Champagne*. Here, as in *Champagne*, the State asks us to read into the Rule 101 requirement that the defendant "set[] forth the grounds therefor" the added proviso that the trial court test the validity of such grounds against any factual findings it makes in the course of pretrial proceedings. *Cf. id.* As in *Champagne*, we decline to do so. *Cf. id.* We note that the trial court here did not have the benefit of our ruling in *Champagne*, which we issued after the trial court made its decision on the State's motion in this case.

█ The State further argues that, when dealing with an insanity defense, the trial court is authorized to strike the defense where a defendant has not proffered at least some evidence of insanity prior to trial. The State relies upon the standard jury instruction on insanity, which identifies specific factors that a jury may consider in deciding the issue of insanity. *See* N.H. CRIMINAL JURY INSTRUCTION 3.07 (1985). While it is true that a defendant is only entitled to a jury instruction on insanity if his insanity defense is supported by "some evidence," *Plante*, 134 N.H. at 460, that standard does not apply when determining the adequacy of the notice given pursuant to Rule 101, *cf. Champagne*, 152 N.H. at 429.

█ We disagree with the dissent's view that the trial court properly struck the defendant's insanity defense because the defendant "proffered no evidence tending to demonstrate that those conditions [of depression and PTSD] were in any way related to his action on October 28, 2003." At the pretrial hearing, defense counsel recognized the need to show that "[the defendant] was suffering from [mental disease or defect] on the date in question." Counsel offered to show that "here we actually have two diagnoses [for depression and PTSD] and he was receiving treatment for them up until the very day that this happened, [and it is] not a great leap for a jury to conclude that he was insane on the date that this occurred." The defendant's offer of proof was sufficient to give notice of his intent to raise an insanity defense and the grounds upon which he based that defense.

Our conclusion today is consistent with the fundamental nature of New Hampshire's unique insanity defense, which we have long recognized as a question of fact for the jury. *See Pike*, 49 N.H. at 438. It is also consistent with *State v. Lopez*, 457 A.2d 20, 23 (N.J. Super. Ct. App. Div. 1983) (holding that trial court lacked authority to grant a pretrial motion to strike an insanity defense because it is "a jury's function" to determine the merits of an insanity defense).

■ Because we conclude that the trial court engaged in an unsustainable exercise of discretion in striking the defendant's insanity defense prior to trial on the grounds that the defendant had not offered evidence that his mental disease or defect caused the charged conduct, we reverse and remand.

## II. Cross-examination

Because the issue of the scope of cross-examination is likely to arise again on remand we will address it here. The defendant argues that his constitutional right to confront adverse witnesses was violated by the trial court's order, which barred him from impeaching King-Fichera's credibility through cross-examination into what he characterizes as "her mental instability and delusional thinking."

During a bench conference at trial, the defendant alleged that:

> [King-Fichera claims to have] acted at the direction of spirit voices, which have told her not to go to court. She believes in UFOs. She believes that surgical procedures have been reversed by divine intervention. She believes that she has shamanistic powers and abilities. She believes that entities can possess another human being, and at multiple times spirits have told her to do things and not to do things.

The defendant also alleged that King-Fichera had a "bipolar disorder." The prosecutor objected, arguing that the defendant had presented no evidence that King-Fichera had the alleged mental impairments or that they affected her credibility. The defendant offered to present his evidence to the court, arguing that cross-examination into her alleged beliefs and bipolar condition was necessary because "[a]ll of that goes straight to [her] credibility, and to her perception of reality."

The trial court sustained the State's objection. It made separate rulings with respect to King-Fichera's alleged bipolar condition and her alleged beliefs. With respect to the alleged bipolar condition, the trial court stated, "In my judgment, that's not enough to attack someone's credibility in the slightest." With respect to King-Fichera's alleged beliefs, the court stated, "[They] don't really go to mental illness, they go to various expressions at times over the years the witness may have said concerning any number of issues . . . . . I don't think any of those are appropriate areas for cross-examination unless it's specific things she may have said at various times in her life regarding UFOs or any other subject."

Later in the trial, the defendant again tried to establish a basis for cross-examining King-Fichera on her alleged mental health issues. At a bench conference, defense counsel told the court that King-Fichera "has,

at one point in the past, been diagnosed with bipolar [disorder]. She was also prescribed lithium." Defense counsel also stated that "we have evidence ... from [King-Fichera's] own writings that [she believes] she has shawmanistic [*sic*] powers and gifts .... She believes in UFOs. She had written a letter to Grafton County Superior Court ... telling the judge there that a spirit told her not to go to court." The trial court did not reconsider its prior ruling prohibiting defense counsel from cross-examining King-Fichera about these matters.

On appeal, the defendant argues that "two factors in combination establish that the trial court erred in barring the proffered cross-examination." He first argues that "the prosecution's case depended substantially on [King-Fichera's] credibility, and the defense disputed the truth of much of her testimony" and that "[t]he importance and contested nature of [her] testimony thus tended to support the admission of the proffered cross-examination." Second, he argues that "the proffered cross-examination related directly to credibility by showing that [King-Fichera] currently held delusional beliefs about herself, other people, and the other matters identified in the proffer." In sum, he argues, "A jury could reasonably conclude that a witness who presently holds delusional beliefs about important matters in the witness's life may not have the ability accurately to perceive the important matters at issue at the trial."

The State makes three arguments in response. First, it argues that the trial court properly prohibited the defendant from cross-examining King-Fichera about her alleged bipolar condition because "the defendant offered no evidence that King-Fichera suffered from a mental illness at the time of the incident that would have affected her ability to perceive and recount events." Second, the State argues that the trial court properly prohibited cross-examination into King-Fichera's allegedly "delusional" beliefs because "the defendant offered no evidence that, on the date in question, these beliefs affected her ability to perceive and recount events." Finally, the State argues that "[t]he trial court properly barred cross-examination into King-Fichera's mental health and various beliefs because they were not relevant to her credibility as a witness."

The right to cross-examine adverse witnesses in criminal cases is fundamental. *State v. Etienne,* 146 N.H. 115, 117 (2001). This right is guaranteed by the Sixth Amendment to the United States Constitution, *see Douglas v. Alabama,* 380 U.S. 415, 418 (1965), and by Part I, Article 15 of the New Hampshire Constitution, *see Etienne,* 146 N.H. at 117. Consistent with *State v. Ball,* 124 N.H. 226, 232 (1983), we first consider the defendant's arguments under Part I, Article 15 of the State Constitution. We refer to cases decided under the Sixth Amendment only to aid our State constitutional analysis. *Ball,* 124 N.H. at 233.

■ "Although the latitude permitted on cross-examination is within the discretion of the trial court, and the broad discretion of the trial court to fix the limits of cross-examination applies to attacks upon [a witness's] credibility as well as other proper subjects of cross-examination, the trial court may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry." *State v. Ramos*, 121 N.H. 863, 866-67 (1981) (citations omitted), *abrogated on other grounds by State v. Graf*, 143 N.H. 294, 298 (1999). "Once a defendant has been permitted a threshold level of inquiry, however, the constitutional standard is satisfied, and the judge's limitation of cross-examination thereafter is measured against an unsustainable exercise of discretion standard." *State v. Flynn*, 151 N.H. 378, 388 (2004).

We have not before addressed to what extent a defendant may use cross-examination into a witness's alleged mental instability to impeach her credibility. The overwhelming majority of courts that have addressed this question have adopted the rule that "a defendant has the right to attempt to challenge [a witness's] credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which he was attempting to testify." *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001) (quotation omitted), *cert. denied*, 534 U.S. 1140 (2002); *see also United States v. Butt*, 955 F.2d 77, 82 (1st Cir. 1992); Annotation, *Cross-examination of Witness as to His Mental State or Condition, to Impeach Competency or Credibility* (hereinafter "*Mental State or Condition*"), 44 A.L.R.3D 1203, 1210-11 (1972 & Supp. 2005). The reason for this rule is that:

> [T]he jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth. It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing.

*Greene v. Wainwright*, 634 F.2d 272, 276 (5th Cir. 1981) (quotation and ellipsis omitted).

■ However, while a defendant is entitled to cross-examine a witness about her psychiatric history in order to impeach her credibility, this "does not mean that the basis for impeachment can be suggestion or innuendo with no evidentiary foundation." *United States v. Rivera-Santiago*, 872 F.2d 1073, 1085 (1st Cir. 1989). The trial court may prohibit cross-examination if the defendant is unable to show that the mental impairment affects the witness's perception of events to which she is testifying. *See*

*Mental State or Condition*, 44 A.L.R.3D at 1226; *see also Velasquez v. United States*, 801 A.2d 72, 80-81 (D.C. 2002), *cert. denied*, 537 U.S. 963 (2002); *Polson v. State*, 207 N.E.2d 638, 640 (Ind. 1965).

▮ To be relevant, the cross-examination must evidence an "impairment" of the witness's "ability to comprehend, know, and correctly relate the truth." *Jimenez*, 256 F.3d at 343 (quotation omitted). "No rule outlines with precision the severity and timing that make a witness's mental illness relevant for impeachment purposes. ... [T]he general principle [is] that a diagnosis of schizophrenia or a psychosis will be relevant, unless the diagnosis is too remote in time from the events alleged in the indictment." *Id.* "For witnesses whose mental history is less severe, [trial] courts are permitted greater latitude in excluding records and limiting cross-examination." *Id.* at 344.

The reasoning in *Jimenez* is consistent with language of the First Circuit:

> For over forty years, federal courts have permitted the impeachment of government witnesses based on their mental condition at the time of the events testified to. Evidence about a prior condition of mental instability that provides some significant help to the jury in its efforts to evaluate the witness's ability to perceive or to recall events or to testify accurately is relevant . . . .
>
> Despite this precedent, we are aware of no court to have found relevant an informally diagnosed depression or personality defect. Rather, federal courts appear to have found mental instability relevant to credibility only where, during the time-frame of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth.

*Butt*, 955 F.2d at 82-83 (quotation and citations omitted).

In this case, the defendant's offer of proof that King-Fichera was mentally ill consisted of an alleged diagnosis of bipolar disorder and prescription for lithium made "at one point in the past," and over 300 pages of documentation allegedly showing that King-Fichera had "delusional" beliefs. Nothing in the record suggested that King-Fichera suffered from a severe mental illness, such as schizophrenia or another psychosis.

▮ The defendant argued at trial that King-Fichera's bipolar disorder "goes straight to credibility, and to her perception of reality," but offered

no evidence that this disorder caused her to lie or hallucinate or affected her perception of the events to which she testified. Thus, the defendant did not demonstrate that King-Fichera's alleged bipolar disorder was relevant for impeachment purposes. The trial court had considerable discretion to prohibit cross-examination into King-Fichera's alleged bipolar condition and its effect on her credibility.

With respect to King-Fichera's alleged beliefs, the defendant argued that they too go "to her underlying credibility," specifically, to her "perception of reality and her ability to recount events." However, his offer of proof did not allege that King-Fichera's unusual beliefs were symptoms of a mental illness that caused her to lie or hallucinate or dramatically impaired her ability to perceive and tell the truth. *Cf. id.* As with the alleged bipolar disorder, the defendant did not demonstrate that these beliefs were relevant for impeachment purposes. Accordingly, the trial court had the discretion to bar cross-examination into King-Fichera's alleged beliefs and did not err in its ruling.

As the Federal Constitution offers the defendant no greater protection than does our State Constitution under these circumstances, *see Flynn*, 151 N.H. at 389; *Jimenez*, 256 F.3d at 342-44, we reach the same result under the Federal Constitution as we do under the State Constitution.

*III. Conclusion*

We conclude that the trial court engaged in an unsustainable exercise of discretion by striking the defendant's insanity defense before trial, although it did not err in restricting the defendant's cross-examination of King-Fichera about her alleged bipolar disorder and abnormal beliefs. Accordingly, we reverse and remand for proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, C.J., and HICKS, J., concurred; DALIANIS, J., with whom GALWAY, J., joined; dissented.

DALIANIS, J., dissenting. Because I believe that the trial court properly exercised its discretion in striking the defendant's insanity defense, I respectfully dissent.

I agree with the majority's reaffirmation of the rule permitting defendants to establish an insanity defense using lay witness testimony. However, I disagree with the majority's conclusion that the defendant's notice of affirmative defense was sufficient to allow an insanity defense at trial. Superior Court Rule 101, which the parties agree applies to this case, requires that defendants intending to claim a defense specified in the

Criminal Code file notice of such intention "setting forth the grounds therefor." In New Hampshire, the affirmative defense of insanity requires proof, by clear and convincing evidence, that a defendant is insane *at the time he or she acts*. *See* RSA 628:2, I, II (1996).

The majority finds support for its conclusion in *State v. Champagne*, 152 N.H. 423 (2005). In *Champagne*, the defendant gave notice, pursuant to Rule 101, of his intent to raise the affirmative defense of renunciation. *Id.* at 427. The affirmative defense of renunciation requires that a defendant "voluntarily renounc[e] his criminal purpose by abandoning his effort to commit the crime ... under circumstances manifesting a complete withdrawal of his criminal purpose." RSA 629:1, III(a) (Supp. 2005). In his notice of affirmative defense, the defendant in *Champagne* explicitly referenced evidence that would allegedly demonstrate his voluntary withdrawal from and renunciation of the crime underlying the charged offense. *Champagne*, 152 N.H. at 429. We held, accordingly, that the notice met Rule 101's requirement that a notice of affirmative defense "set[] forth the grounds therefor." *Id.*

In the instant case, the defendant's "Notice of Defense of Insanity" merely announced his intention to "assert the defense of insanity" at trial. The notice plainly falls short of Rule 101's requirement that a notice of affirmative defense "set[] forth the grounds therefor," and I believe that this in itself justifies the striking of the insanity defense. Nevertheless, the trial court held a hearing on the State's motion to strike the defendant's insanity defense, at which the defendant merely proffered evidence showing that he had been diagnosed with depression and PTSD. He proffered no evidence tending to demonstrate that those conditions were in any way related to his actions on October 28, 2003.

It is not enough to merely show that, at some time in the past, a defendant was diagnosed with a disorder that may or may not have influenced the actions for which the defendant is being tried. The "grounds" upon which an insanity defense may be based require not only that a defendant be insane, but also that he or she be insane at the time that he or she commits the underlying offense. *See* RSA 628:2, I. For this reason, the defendant's proffer was insufficient for the purposes of Rule 101, and I would, accordingly, affirm the trial court's decision to strike the defendant's insanity defense.

Thus, while I agree with the majority that the trial court correctly barred the defendant from cross-examining King-Fichera, I respectfully dissent from the majority's conclusion that the trial court erred by striking the defendant's insanity defense.

GALWAY, J., joins in the dissent.