Original
No. 98-698

PETITION OF JAMES MELLO

November 2, 2000

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the petitioner.

*Philip T. McLaughlin*, attorney general (*Richard J. Lehmann*, assistant attorney general, on the brief and orally), for the State.

BROCK, C.J. The petitioner, James Mello, seeks a writ of certiorari from an order of the Superior Court (*Smith*, J.) ruling that his reprosecution after the court had declared a mistrial would not violate double jeopardy. We grant the petition.

In July 1998, the petitioner was tried before a jury in Superior Court (*Smith*, J.) for felonious sexual assault and aggravated felonious sexual assault. *See* RSA 632-A:2, :3 (1996 & Supp. 1999). On July 24, the trial court notified counsel in chambers that the jury appeared to be deadlocked eleven to one in favor of acquittal. The court explained that one female juror "had some type of early-in-life personal experience of a sexual nature," and that "whoever that person is" had been overheard outside the jury room to say, "I don't care what the rest of you people say. I'm not changing my mind." When defense counsel asked whether the woman had failed to reveal the experience on her juror questionnaire, the court answered, "It must be, because I have reviewed all the questionnaires. There was a sexual assault on one of the men." After the court indicated that it might declare a mistrial, defense counsel moved for a mistrial. The trial court stated that it would not grant the motion at that time, but would call the jury into the courtroom, and if the foreperson indicated her belief that the jury was "hopelessly deadlocked," the motion would be granted.

Thereafter, the jury was called into the courtroom. The following bench conference ensued:

[THE DEFENSE]: Your Honor, upon exiting, I was wondering about arguing a motion to have the juror excused and proceeding with an eleven-person panel.

THE COURT: I can't do that, because I don't know who the juror is, and I don't have the right to inquire.

[THE DEFENSE]: I guess my concern is . . . that the individual, whoever it is, fabricated or misled on the [juror] questionnaire.

THE COURT: That's an assumption on your part, at this point in time. You remember the cases that have come

down from the Supreme Court as it relates to interfering with jury deliberations?

[THE DEFENSE]: I understand.

THE COURT: The information that you were given by me is not information that you can use in any way, shape, manner or form.

[THE DEFENSE]: I just — I expected a ruling, but I wanted at least to make an effort, under *State v. King*, [131 N.H. 173, 551 A.2d 973 (1988),] to go forward with a depleted panel.

THE COURT: I understand.

[THE DEFENSE]: Thank you.

The court inquired whether the jury foreperson believed the jury to be hopelessly deadlocked. When she answered affirmatively, the court excused the jury from the courtroom and announced without objection: "At the request of the defendant, this Court declares a mistrial."

The petitioner subsequently filed a motion for a directed verdict, which we construe as a motion to dismiss, on the basis that further prosecution was barred by double jeopardy. The trial court denied the motion and a subsequent request for an interlocutory appeal. This petition followed.

The petitioner argues that the Double Jeopardy Clauses of the United States and New Hampshire Constitutions, *see* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16, prohibit a retrial because the trial court declared the mistrial without "manifest necessity" and without his consent. We address the petitioner's State constitutional claim first, referencing federal case law only as an analytical aid. *See State v. Cannuli*, 143 N.H. 149, 151, 722 A.2d 450, 451 (1998). Because we find protection under the New Hampshire Constitution, we do not engage in a separate federal analysis. *See State v. Goodnow*, 140 N.H. 38, 40, 662 A.2d 950, 951 (1995).

█ The Double Jeopardy Clause of the New Hampshire Constitution prohibits the State from placing a criminal defendant in jeopardy more than once for the same offense, thereby preserving the defendant's "'valued right' to have his trial completed by a particular tribunal." *State v. Gould*, 144 N.H. 415, 416, 743 A.2d 300, 302 (1999). Thus, the State may ordinarily retry the defendant after a declaration of mistrial over the defendant's objection "only if

there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *State v. Paquin*, 140 N.H. 525, 528, 668 A.2d 47, 49 (1995) (quotation omitted). Where, however, the defendant has consented to the declaration, retrial is not barred unless the "defendant's motion for a mistrial is the result of judicial or prosecutorial impropriety that was intended to provoke the defendant into filing the motion." *Earnest v. Dorsey*, 87 F.3d 1123, 1129 (10th Cir.), *cert. denied*, 519 U.S. 1016 (1996); *see State v. Duhamel*, 128 N.H. 199, 202-03, 512 A.2d 420, 422 (1986).

We need not decide whether the petitioner consented to the mistrial in this case because even if we were to conclude that he consented, retrial is barred under the peculiar circumstances of this case. The petitioner contends that the trial court possessed information suggesting that the holdout juror was not truthful on her questionnaire, that she was not deliberating with impartiality, and that the "apparent juror misconduct" was affecting the jury deadlock. Therefore, the petitioner argues, the court had an obligation to address the misconduct while the jury was empaneled "to protect . . . [the petitioner's] right to have his trial completed by a single tribunal." Because the court did not attempt to remedy the situation, but instead "prohibit[ed] the defendant from using the information about the misconduct to pursue alternative remedies," the petitioner argues that a retrial would be unfair.

"It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury." *State v. Weir*, 138 N.H. 671, 673, 645 A.2d 56, 57 (1994) (quotation omitted). "Accordingly, a juror found to be disqualified at any time before or during the trial should be removed from further service." *State v. Rideout*, 143 N.H. 363, 365, 725 A.2d 8, 9 (1999); *see also* RSA 500-A:12, II (1997) ("If it appears that any juror is not indifferent, he shall be set aside on that trial."). Where a juror's qualifications are called into doubt during trial, the trial judge "should carefully investigate every source which would be calculated to throw any light upon the competency of a juror, and if the judge is not entirely satisfied of the competency of the juror, such juror should be excused." *Weir*, 138 N.H. at 678, 645 A.2d at 60 (quotation omitted); *see also United States v. Gaston-Brito*, 64 F.3d 11, 12 (1st Cir. 1995) (court must undertake an adequate inquiry when it is apprised of potential juror bias during trial).

■ Once the trial court became aware that a juror may have failed to reveal information on her juror questionnaire that could have been grounds for her disqualification, the court had an

independent obligation to *voir dire* the jurors individually and determine which, if any, had failed to disclose information that would justify her disqualification. *Cf. State v. Wong*, 138 N.H. 56, 66, 635 A.2d 470, 477 (1993). We disagree with the State that such an inquiry would have required the court to interfere with the deliberative process by asking jurors the reasons for their votes. Rather, because the court knew that a female juror had made the reported comment, it simply needed to ask the female jurors individually whether any personal experiences biased their deliberations. If the court determined that a juror should have been disqualified, it could have excused that juror and, if it "obtain[ed] a stipulation by the parties to proceed with fewer than twelve jurors," proceeded with an eleven-person panel. *State v. Dushame*, 136 N.H. 309, 315, 616 A.2d 469, 472 (1992). Had the excused juror been the holdout juror, the deadlock would have been resolved. Although we cannot know whether these alternatives would have resolved the deadlock, the trial court had a duty to explore them. *Cf. Weir*, 138 N.H. at 678, 645 A.2d at 60. Because the trial court did not elect to explore these alternatives, we conclude that under the unique circumstances of this case, it would be unfair to subject the defendant to a new trial.

*Petition granted.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; HORTON and BRODERICK, JJ., concurred.