Hillsborough-southern judicial district
No. 2006-086

THE STATE OF NEW HAMPSHIRE

v.

GEORGE BRUM

Argued: March 15, 2007
Opinion Issued: May 10, 2007

*Kelly A. Ayotte*, attorney general (*Jeffrey S. Cahill*, senior assistant attorney general, on the brief and orally), for the State.

*Getman, Stacey, Schulthess & Steere, PA,* of Bedford (*Andrew R. Schulman* and *Elizabeth L. Hurley* on the brief, and *Mr. Schulman* orally), for the defendant.

DALIANIS, J. The defendant, George Brum, appeals his conviction by a jury in Superior Court (*Hicks,* J.) on three counts of aggravated felonious sexual assault, *see* RSA 632-A:2, I(a), (m) (Supp. 2006), and one count of misdemeanor sexual assault, *see* RSA 632-A:4, I(a) (Supp. 2006). We affirm.

The record supports the following: The defendant allegedly sexually assaulted the victim during the early morning hours of July 31, 2004. He raised consent as a defense. Eight years earlier, in April 1996, the victim reported to the Concord Police that a male co-worker had sexually assaulted her. The encounter began consensually. On the evening of the assault, the victim, her co-worker and his friend spent time at a local bar. Soon after returning to her residence, the victim and the co-worker began kissing and fondling one another, and asked the co-worker's friend to join them. After a brief period of sexual activity, the victim indicated that she was uncomfortable with what was happening. The friend ended the contact and fell asleep on the victim's bed. The victim and her co-worker left the bedroom and went into another room, where they had sexual intercourse. The co-worker claimed that the victim consented to having sexual intercourse with him. He was never charged.

In 2005, the victim wrote a statement about the 1996 assault, which differed from the account she had given to the police in 1996. In her 2005 statement, the victim stated that the co-worker and his friend held her down and removed her clothing; in 1996, the victim did not say this. In her 2005 statement, the victim stated that her co-worker forced himself on top of her; in 1996, according to the officer with whom she spoke, the victim stated that her co-worker "escorted" her to another room, laid her on her back and "continued his sexual advances towards [her]." Further, in 2005, she described the co-worker's actions as a "sexual assault," whereas, in 1996, she did not use this phrase. In 2005, she said that the incident caused bruises on her legs; she did not mention bruising in 1996.

Before trial, the defendant sought permission to introduce evidence of the 1996 sexual assault through cross-examination and extrinsic evidence. The trial court ruled that the defendant could question the victim about the fact that she made a prior allegation of sexual assault and the discrepancies between her 1996 report and her 2005 statement. The court precluded the defendant from questioning the victim about the specifics of the prior allegation. The court ruled, "Any suggestion that the victim may have engaged in sexual contact with two men at the same time is highly prejudicial to the victim and has no probative value to the defendant's denial of these charges or to his case for consent." The court also prohibited the defendant from introducing extrinsic evidence of the 1996 assault, finding that whether the victim had the capacity to consent or did consent to the 1996 event was a collateral matter and was inadmissible at trial.

On the first day of trial, the court explained its order as follows:

[B]ut for the advent of th[e] 2005 statement, the Court in all likelihood would have prohibited [the defendant] from talking in any way, shape or form or examining in any way, shape or form regarding the 1996 incident[] . . . .

However, because of the curious advent of th[e] 2005 statement regarding the same event, and the existence of some differences between the allegations of 1996 and 2005, the Court felt that the defendant's confrontation rights were sufficiently triggered so that some limited cross-examination should be allowed.

The court then clarified:

It was the Court's intention . . . that [the defendant] be limited to general questions only, and beginning with the question of:

Did you make a sexual assault allegation in 1996?

Answer: Yes.

Did you write a statement about those events in 2005?

Answer: Yes.

There are differences between those two statements.

Answer: Whatever she answers.

. . . .

[I]t's the Court's ruling that [the defendant] may ask, in general, . . . whether in the 2005 version the number of drinks consumed was different from the 1996 version.

. . . .

[The defendant is] allowed to ask in general whether the victim gave a different version of facts in the allegation of assault in 2005 than she gave in 1996. And I will allow [the defendant] to go so far as to say in [the] 2005 version you stated that you were being held down, but in the 1996 version, you did not. And that's as far as I'm allowing [the defendant] to go.

The court also permitted the defendant to ask the victim about the fact that in her 2005 statement she said that her legs were bruised, while she did not mention this to the police in 1996. The court prohibited the defendant from asking the victim whether any charges were filed against her co-worker for the 1996 incident.

Consistent with the court's order, on cross-examination, the victim testified that: (1) in 1996, she claimed to have been sexually assaulted; (2) in 1996, she spoke to a certain police officer about this incident; (3) in 2005, she made a written statement about the incident; (4) when she spoke to police in 1996, she said that she had had four drinks while in her 2005 statement, she said that she had only one drink; (5) in her 2005 statement, she said that she had been held down on the bed; and (6) in her 2005 statement she said that she had bruises on her legs. Although asked, the victim was unable to recall whether she told the police in 1996 that she had been held down or had bruises, and the defendant did not use the police officer's notes of the 1996 interview to refresh her recollection. *See* N.H. R. Ev. 612.

Later, while defense counsel was examining one of his own witnesses, he sought to introduce testimony that the defendant called this witness from jail and told her to tell the victim to tell the truth. Counsel argued that this statement to the witness was not hearsay because it was a party admission. *See* N.H. R. Ev. 801(d)(2). The trial court excluded it as hearsay.

## A

The defendant first argues that the trial court erred when it precluded him from cross-examining the victim about "the fact that she made a factually accurate report of the 1996 incident to the Concord Police for the purpose of commencing an unwarranted criminal investigation without probable cause." As the trial court *allowed* the defendant to cross-examine the victim about the fact of her 1996 report to the police, we interpret his argument to be that the trial court erred when it precluded him from asking the victim about the fact that no charges were ever brought against her co-worker for the 1996 incident.

New Hampshire Rule of Evidence 608(b) provides, in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

When exercising its discretion under Rule 608(b), the court must also consider the companion Rules 403 and 611. As the reporter's notes to Rule 608(b) explain: "[T]he overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion

of issues, or misleading the jury, and that of Rule 611 bars harassment and undue embarrassment." N.H. R. Ev. 608 Reporter's Notes.

■ When assessing the probative value of evidence under Rule 608(b), among the factors to consider are:

> (1) whether the testimony of the witness ... is crucial or unimportant; (2) the extent to which the evidence is probative of truthfulness or untruthfulness; (3) the extent to which the evidence is also probative of other relevant matters; (4) the extent to which the act of untruthfulness is connected to the case; (5) the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony; (6) the nearness or remoteness in time of the specific instances to trial; (7) the likelihood that the alleged specific-instances ... conduct in fact occurred; (8) the extent to which specific-instances evidence is cumulative or unnecessary in light of other evidence already received on credibility; and (9) whether specific-instances evidence is needed to rebut other evidence concerning credibility.

*State v. Miller*, 155 N.H. 246, 252-53 (2007) (quotations omitted).

■ When assessing the danger of unfair prejudice, the court may consider whether the jury will develop a bias against the witness because of the Rule 608(b) evidence, whether the jury will give the evidence too much weight or whether doubts over the occurrence of the specific-instances evidence will result in time-consuming and distracting mini-trials on that point. *Id.* Additionally, consistent with Rule 611, the court may consider whether admitting the Rule 608(b) evidence will subject the witness to "harassment and undue embarrassment." *Id.* (quotation omitted).

We review the trial court's decision under our unsustainable exercise of discretion standard. *See State v. Abram*, 153 N.H. 619, 632 (2006). To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ We hold that the trial court acted within its discretion by precluding the defendant from asking the victim about the fact that no charges were brought against her co-worker for the 1996 incident. Based upon the evidence before it, the trial court reasonably could have found that whether charges were ever filed against the victim's co-worker was not probative of the victim's character for truthfulness or untruthfulness. As

the defendant admits, in 1996, the victim gave the police a *truthful* account of what occurred between her and her co-worker. That charges were not filed against the co-worker does not transform the victim's admittedly truthful account into a false one.

## B

■ The defendant next asserts that the trial court violated Rule 608(b) by prohibiting him from introducing extrinsic evidence of the victim's 1996 and 2005 allegations about the 1996 incident. Under Rule 608(b), while a cross examiner may inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness, generally, the examiner must take the answer as the witness gives it. *State v. Hopkins*, 136 N.H. 272, 276 (1992). The examiner may not introduce "extrinsic evidence, such as calling other witnesses, to rebut the witness's statements." *Id.*

■ Despite Rule 608(b)'s apparent bar to extrinsic evidence, we have held that "in the context of sexual assault [the] Rule ... should not be interpreted so strictly as to preclude the admission of extrinsic evidence that is probative of a material issue." *State v. Ellsworth*, 142 N.H. 710, 719 (1998). Thus, in *Ellsworth*, we created an exception to Rule 608(b)'s bar to extrinsic rebuttal evidence that applies "where the allegations [of sexual assault] are similar, and the proffered evidence is highly probative of the material issue of the complainant's motives." *Id.* In *State v. White*, 145 N.H. 544, 548 (2000), *cert. denied*, 533 U.S. 932 (2001), *petition for habeas corpus denied by White v. Coplan*, 296 F. Supp. 2d 46 (D.N.H. 2003), *vacated on fed'l constitutional grounds*, 399 F.3d 18 (1st Cir.), *cert. denied*, 126 S. Ct. 478 (2005), we further clarified that a "defendant may introduce a victim's prior allegations of sexual assault by showing that the prior allegations were demonstrably false, which we interpret to mean 'clearly and convincingly untrue.'"

The defendant asserts that he should have been allowed to introduce extrinsic evidence of the victim's 1996 and 2005 allegations about the 1996 incident because these allegations were similar to the allegations against the defendant, highly probative of the victim's motive, and demonstrably false.

With respect to the 1996 allegations, the defendant *concedes* that they were "factually accurate," and that the victim's co-worker and his friend "gave corroborating, interlocking, contemporaneous statements" about the incident that confirmed her 1996 allegations. He argues that they were demonstrably false because the victim "asked the police to pursue a criminal prosecution," even though her factual account of the incident "was one of consensual, non-criminal conduct."

■ Allegations that the defendant admits are "factually accurate" are, by definition, and as a matter of law, not clearly and convincingly demonstrably false. Accordingly, we conclude that the trial court did not err by precluding him from admitting extrinsic evidence of the victim's 1996 allegations.

With respect to the 2005 statement, we note that introducing extrinsic evidence of this statement would not have rebutted the victim's testimony, but would have corroborated it. Even if we assume, without deciding, that this is a proper use of extrinsic evidence under Rule 608 and that the defendant demonstrated by clear and convincing evidence that the 2005 allegations were demonstrably false, we hold that the trial court did not err by precluding extrinsic evidence of this statement because the allegations contained therein are not sufficiently similar to those against the defendant. *See Ellsworth*, 142 N.H. at 719.

The 2005 report of forcible sexual intercourse in 1996 and the charged crimes, which involved fellatio and inappropriate touching, "completely lack similarity and evidentiary nexus." *Id.* According to the victim's 2005 statement, the 1996 incident began after the victim invited her co-worker and his friend back to her apartment "to watch some movies & have a couple of drinks." By contrast, according to the victim's trial testimony, the incident involving the defendant began when he knocked on her apartment window, uninvited, at approximately three o'clock in the morning.

According to the 2005 statement, the 1996 incident began as a sexual encounter between the victim and two men; the incident involving the defendant did not involve a third party. In her 2005 statement, the victim stated that she told both the co-worker and his friend that she "didn't think that this was a good idea" and that "it wasn't something [she] was into." By contrast, according to her trial testimony, the victim actively resisted the defendant, pushing him away repeatedly, biting his lip and legs, begging him to stop, and holding onto her pajama bottoms "for dear life."

Moreover, the sexual acts involved in the 1996 incident and those involving the defendant were different. In her 2005 statement, the victim alleged that in 1996, her co-worker kissed her and had sexual intercourse with her. According to the victim's trial testimony, in addition to forcibly kissing her, the defendant pulled her pajama bottoms to one side and touched her vagina with his fingers and tongue, masturbated in front of her, grabbed her neck and forced her to fellate him, and put his mouth on her breast.

■ Given the lack of similarity between the allegations in the victim's 2005 statement and those against the defendant, we conclude that the trial court did not err by excluding extrinsic evidence of the victim's 2005 statement.

C

The defendant next contends that the trial court's limits upon his cross-examination of the victim concerning the discrepancies between her 1996 account and 2005 statement violated the State Due Process and Confrontation Clauses. *See* N.H. CONST. pt. I, art. 15. Although the defendant cites the Federal Confrontation Clause as well, *see* U.S. CONST. amends. VI, XIV, he does not develop a federal constitutional analysis and, thus, we address only his State constitutional claim. *See State v. Ayer*, 150 N.H. 14, 34 (2003).

■ "The opportunity to impeach a witness's credibility through cross-examination is an incident of rights guaranteed by part I, article 15 of the State Constitution." *State v. Newman*, 148 N.H. 287, 289 (2002) (quotation omitted). Trial courts have broad discretion to fix the limits of proper areas of cross-examination, including attacks upon a witness's credibility. *State v. Fichera*, 153 N.H. 588, 599 (2006). The trial court, however, may not completely deny a defendant the right to cross-examine a witness upon a proper matter of inquiry and must permit sufficient cross-examination to satisfy a constitutional threshold. *Id.* "Once a defendant has been permitted a threshold level of inquiry ... the constitutional standard is satisfied, and the judge's limitation of cross-examination thereafter is measured against an unsustainable exercise of discretion standard." *Id.* (quotation omitted). "Thus, when the record reveals that a threshold level of inquiry was allowed, we will uphold the trial court's decision limiting the scope of further cross-examination unless the defendant demonstrates that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Newman*, 148 N.H. at 290.

The record reveals that the defendant made a threshold level of inquiry into the discrepancies between the victim's 1996 and 2005 accounts of the 1996 incident. In a court exhibit, the defendant informed the court that the victim's 1996 and 2005 accounts were similar in the following respects: (1) the victim found her co-worker on her bed; (2) the victim and the co-worker began to kiss; (3) the victim's clothes were removed; and (4) the co-worker's friend joined the victim and the co-worker in sexual activity, but at some point stopped.

The defendant informed the court that the two accounts also differed in the following respects: (1) the number of drinks the victim consumed; (2)

whether the co-worker and friend held the victim down; (3) whether the victim had bruises on her legs; and (4) whether the co-worker forced himself on the victim and sexually assaulted her. The record shows that the defendant asked the victim about all but one of these discrepancies and, therefore, was permitted a threshold level of inquiry about this subject.

■ Moreover, the defendant has failed to demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Therefore, we hold that the trial court's limits upon the defendant's inquiry into the discrepancies between the victim's 1996 and 2005 accounts of the 1996 incident did not violate the defendant's rights under the State Confrontation Clause.

D

Finally, the defendant argues that the trial court erred when it precluded his witness from testifying that he asked the witness to tell the victim to tell the truth. While at trial, the defendant argued that this statement was not hearsay because it was a party admission, *see* N.H. R. Ev. 801(d)(2), on appeal, he argues for the first time that the statement was not hearsay because he was not admitting it for the truth of the matter asserted, *see* N.H. R. Ev. 801(c). The State contends that the defendant failed to preserve this argument, and we agree. *See State v. Natalcolon,* 140 N.H. 689, 691-92 (1996).

■ Generally, we do not consider issues raised on appeal that were not presented in the trial court. *See State v. McAdams,* 134 N.H. 445, 447 (1991). *But see* SUP. CT. R. 16-A (plain error rule). The preservation requirement recognizes that ordinarily, trial courts should have an opportunity to rule upon issues and to correct errors before they are presented to the appellate court. *State v. Bain,* 145 N.H. 367, 370 (2000). While the issue of the statement's admissibility was presented to the trial court, the argument that the statement was not hearsay because the defendant was not admitting it for the truth of the matter asserted was not. "Consequently, the [State] and the trial court never had the opportunity to consider that legal issue or the development of facts that might or might not have supported that argument." *State v. Szczerbiak,* 148 N.H. 352, 356 (2000) (quotation omitted). Without such consideration, we decline to address the issue on appeal. *See id.* We also decline to consider the issue under the plain error rule as the defendant does not invoke this rule and we see no plain error. *See* SUP. CT. R. 16-A.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and GALWAY, JJ., concurred.