Merrimack
No. 2006-926

### THE STATE OF NEW HAMPSHIRE

v.

### KARL KORNBREKKE

Argued: January 17, 2008
Opinion Issued: March 14, 2008

822

*Kelly A. Ayotte*, attorney general (*Lucy H. Carrillo*, attorney, on the brief and orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Karl Kornbrekke, was tried in Superior Court (*Fitzgerald*, J.) on two counts of aggravated felonious sexual assault, RSA 632-A:2 (2007), resulting in a mistrial. Upon retrial in Superior Court (*McHugh*, J.) in September 2006, he was convicted on the identical counts. On appeal, he challenges the trial court's ruling precluding him from cross-examining the complainant about, or introducing extrinsic evidence of, a prior false accusation of sexual assault. He also challenges the denial of his motion to dismiss based upon double jeopardy. We affirm in part, reverse in part and remand.

Prior to the retrial, the defendant filed a motion *in limine* to allow cross-examination and extrinsic evidence regarding a prior false accusation of sexual assault by the complainant. On May 31, 1997, the complainant told Sergeant Shephard of the Boscawen Police Department that she had been raped by another man, and that during the assault he had grabbed her around the throat. She subsequently recanted in a written statement, stating that she was surprised when the man put his hands around her throat, but that he did not rape her.

The court denied the motion *in limine*. On appeal, the defendant argues that the trial court misapplied the New Hampshire Rules of Evidence and violated his state and federal constitutional rights to confrontation.

I

A trial court has broad discretion to determine the scope of cross-examination or the admissibility of evidence, and we will not upset its

ruling absent an unsustainable exercise of discretion. *State v. Abram*, 153 N.H. 619, 632 (2006). To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. *Id.*

New Hampshire Rule of Evidence 608(b) provides, in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness . . . .

Although Rule 608(b) permits a cross-examiner to inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness, the examiner must generally "take the answer as the witness gives it." *State v. Miller*, 155 N.H. 246, 249 (2007). Rule 608(b) prohibits the examiner from introducing "extrinsic evidence, such as calling other witnesses, to rebut the witness's statements." *State v. Hopkins*, 136 N.H. 272, 276 (1992). Only separate constitutional concerns can overcome this prohibition. *See State v. Ellsworth*, 142 N.H. 710, 719 (1998) ("[D]ue process and confrontation rights guaranteed by the State and Federal Constitutions may trump established evidentiary rules."). Whether the trial court erred in denying cross-examination and whether it erred in excluding extrinsic evidence are distinct inquiries. Both are separate and distinct from the question whether the defendant's constitutional rights to confrontation *mandated* such cross-examination. *See Miller*, 155 N.H. at 250-51. We address each in turn.

■ We first address whether, under Rule 608(b), the trial court properly precluded the defendant from cross-examining the complaining witness regarding a prior false accusation. The defendant need not prove that a prior accusation was demonstrably false in order to cross-examine the complainant about it; rather, the trial court must assess whether the prior accusation is probative of truthfulness or untruthfulness and otherwise admissible. *Id.* at 250.

■ New Hampshire Rule of Evidence 403 limits the discretion granted in Rule 608(b) by excluding relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of . . . needless presentation of cumulative evidence." N.H. R. Ev. 403. In *Miller*, we elaborated upon the

interplay between Rules 403 and 608, setting forth several guiding principles. Factors relating to the degree of probative value include:

> (1) whether the testimony of the witness is crucial or unimportant; (2) the extent to which the evidence is probative of truthfulness or untruthfulness; (3) the extent to which the evidence is also probative of other relevant matters; (4) the extent to which the act of untruthfulness is connected to the case; (5) the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony; (6) the nearness or remoteness in time of the specific instances to trial; (7) the likelihood that the alleged specific-instances conduct in fact occurred; (8) the extent to which specific-instances evidence is cumulative or unnecessary in light of other evidence already received on credibility; and (9) whether specific-instances evidence is needed to rebut other evidence concerning credibility.

*Miller*, 155 N.H. at 252-53 (quotations, citation, and ellipses omitted).

█ Moreover, in assessing the danger of unfair prejudice where the witness in question is *not* the defendant, "the court may consider whether the jury will develop a bias against the witness because of the Rule 608(b) evidence, [and] whether the jury will give the evidence too much weight." *State v. Brum*, 155 N.H. 408, 413 (2007). Finally, the court may consider the risk of time-consuming mini-trials and harassment and undue embarrassment of the witness. *Id.* Consideration of these factors in cases where the defendant seeks to cross-examine a witness regarding a prior false accusation protects the interests of both the defendant and the witness, and establishes the proper scope of inquiry. *See, e.g., id.* at 410-11.

█ The trial court did not have the luxury of applying this precise analysis, as *Miller* was decided after the trial in this case. The parties appear to agree to the application of *Miller*, however, and we will use its factors to guide our analysis. The record reveals that the trial court applied some of the factors later articulated in *Miller*, ruling that "there's enough dissimilarities in my view—time, space and *et cetera*—which makes me have no difficulty in saying it's way too prejudicial and not probative of anything." The court also expressed a concern for inviting a trial within a trial. Because the complainant's prior accusation is highly probative in this case, we hold that the trial court erred in denying the defendant's motion *in limine*, and we reverse.

Given the nature of this case—a sexual assault case with no eyewitnesses other than the complainant and the defendant—the

complainant's testimony, and thus her credibility, is crucial. This is particularly true given the scarcity of physical evidence.

Here, the defendant sought to cross-examine the complainant as to whether she had in fact recanted a prior accusation of sexual assault. He asserts several similarities between the two accusations. In the prior accusation, the complainant alleged that she was lying in bed with the accused when he forced himself on her. Here, she alleges that the defendant pulled her down onto a bed and committed the assault. Both men were recent acquaintances.

The defendant alleges that in both situations the complainant became accusatory after having sex in a manner she later regretted. In the prior incident, the accused had not used a condom, and here, the complainant was menstruating at the time of the encounter. Finally, in the prior incident a witness told the police that the complainant had offered to drop the charges in exchange for four hundred dollars and an ounce of marijuana. Here, the defendant told police that prior to their sexual encounter, the complainant had asked him to fill a controlled drug prescription for her benefit.

Although the current and former accusations here are not as strikingly similar as those in *White v. Coplan*, where "the past accusations by the girls bore a close resemblance to the girls' present testimony—in one case markedly so," *Coplan*, 399 F.3d 18, 24 (1st Cir. 2005), *cert. denied*, 546 U.S. 972 (2005), they are sufficiently similar so as to satisfy the fifth *Miller* factor. That both accusations are of sexual assault is significant. *Compare id.* (finding evidence "considerably more powerful [because] [t]he past accusations were about sexual assaults, not lies on other subjects") *with Miller*, 155 N.H. at 258 (finding the evidence less potent in part because the false accusations the defendant sought to introduce were of physical and emotional abuse rather than sexual assault). While the prior accusation occurred seven years before the current charged offense, that time period is not so remote as to eliminate probity. *Cf.* N.H. R. Ev. 609(a)-(b) (making criminal convictions presumptively admissible if less than ten years has elapsed since the conviction or release from the confinement imposed for the conviction, whichever is later).

The likelihood that the alleged conduct occurred, *i.e.*, whether the complainant in fact made a prior false accusation, is a critical factor to the probative value analysis in this case. If no such false accusation was made, then the cross-examination is not probative of the complainant's character for truthfulness or untruthfulness. *See Brum*, 155 N.H. at 413-14. The State does not dispute that the complainant recanted her prior allegation. It contends that, perhaps rather than having falsely accused the other man of rape, the complainant simply misunderstood their encounter.

Regardless of what characterization it is given, inconsistency exists between the complainant's original allegation and her later recantation, and this inconsistency can be used to impeach her credibility. The likelihood that the prior false accusation occurred, whatever the motivation behind it, weighs heavily in favor of admissibility.

Finally, evidence of a prior false accusation was not cumulative as to the complainant's credibility. Although the defendant was able to impeach the complainant's credibility through other areas of inquiry, none was as potent as evidence of a prior false accusation of sexual assault. *See Coplan*, 399 F.3d at 25 ("Prior admitted lies ... in similar circumstances could powerfully discredit the witness."). A prior false accusation of sexual assault is highly probative of the complainant's truthfulness or untruthfulness regarding the current charges. *See id.* at 24-25.

The specific-instance evidence in this case is distinguishable from that properly excluded in *Brum*. There, the defendant acknowledged that the complainant's account of a prior incident was truthful. *Brum*, 155 N.H. at 414. That no charges related to the prior incident were filed did not transform the account into a false one, and the trial court could have reasonably found that the account was not probative of the complainant's truthfulness or untruthfulness. *Id.* at 413-14. Here, on the other hand, the complainant recanted her initial allegation that a rape occurred.

While cross-examination as to the prior false accusation would be highly probative in this case, there is little danger of unfair prejudice in allowing it. That a jury would likely give evidence of a false accusation by the complainant significant weight is precisely what lends the evidence its probative value. The prejudicial effect on the State—impeachment of the complainant's credibility—is merely a function of the evidence's probative value, and thus not unfairly prejudicial. *See Redmond v. Kingston*, 240 F.3d 590, 592 (7th Cir. 2001). In addition, no risk of harassment or undue embarrassment of the witness would result from the defendant merely inquiring as to whether a prior false accusation was made.

The concern for a trial within a trial is not directly invoked merely by allowing cross-examination. *See State v. Hurlburt*, 132 N.H. 674, 676 (1990), *cert. denied*, 503 U.S. 1008 (1992) ("It is the prohibited extrinsic evidence that leads to a trial within a trial, not the inquiry on cross-examination."). The trial court can avoid a mini-trial by properly limiting the scope of inquiry as to the prior accusation. *See, e.g., Brum*, 155 N.H. at 410-11 (providing an example of such parameters, where the trial court allowed questioning as to discrepancies, but not as to the specifics of the prior allegation).

■ For the foregoing reasons, we conclude that the trial court erred in precluding the defendant from cross-examining the complainant regarding her prior accusation. We also conclude that the State failed to demonstrate beyond a reasonable doubt that this preclusion did not affect the verdict. *See State v. Wall*, 154 N.H. 237, 245 (2006). Given the lack of eyewitnesses or physical evidence, the evidence admitted was not of the "overwhelming nature, quantity, or weight" that would render a powerful attack on the complainant's credibility inconsequential. *See id.* Thus, the error cannot fairly be deemed harmless, and we reverse.

We decline to address whether the trial court erred in excluding extrinsic evidence of the prior false accusation because this issue is not ripe for decision. Given the Rule 608(b) restriction on extrinsic evidence, it is only upon a witness's denial of making a false accusation that the admissibility of such evidence becomes an issue. *See Coplan*, 399 F.3d at 25. On remand, the trial court may determine after cross-examination as to the prior accusation whether the defendant's confrontation rights require the admission of extrinsic evidence.

We also decline to address the defendant's confrontation rights claims. "[W]e decide cases upon constitutional grounds only when necessary." *Wall*, 154 N.H. at 244. The defendant finds relief in the rules of evidence.

## II

Finally, we address the defendant's claim that his retrial violated his constitutional right against double jeopardy. *See* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16. We first address his claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions for guidance only. *Id.* at 232-33.

During jury deliberations in the original trial, the jury communicated to the court that it was unable to reach a unanimous verdict and inquired how long it would have to deliberate before being considered a hung jury. The jury indicated that it was split 5-6-1 on one count and 4-7-1 on the other. The jury further communicated that it had become aware that one of the jurors was a social worker who worked with sexual assault victims and had a child who was a victim of sexual assault. After asking defense counsel if he had any objection and finding that he did not, the trial court declared a mistrial. The defendant later filed a motion to dismiss, claiming that retrial would violate his right against double jeopardy. The Court (*Fitzgerald*, J.) denied the motion.

■ The Double Jeopardy Clause of the New Hampshire Constitution prohibits the State from placing a defendant in jeopardy more than once for the same offense, thereby protecting the defendant's "valued right to

have his trial completed by a particular tribunal." *State v. Gould*, 144 N.H. 415, 416 (1999) (quotation omitted). Absent the defendant's consent, the State may ordinarily retry a defendant after declaration of a mistrial only upon a showing of "manifest necessity." *Petition of Mello*, 145 N.H. 358, 360-61 (2000). While "we generally defer to a trial court's discretion in declaring a mistrial, ... it is our duty to ensure that the scrupulous exercise of judicial discretion led to the decision." *Gould*, 144 N.H. at 417 (quotation omitted).

Here, when given the opportunity by the trial court, the defendant declined the invitation to object to a mistrial. Where a defendant has consented to declaration of a mistrial, retrial is not barred absent judicial or prosecutorial impropriety. *Mello*, 145 N.H. at 361. Under certain circumstances, however, retrial may be barred notwithstanding the defendant's consent.

In *Mello*, a female juror who "had some early-in-life personal experience of a sexual nature" was overheard outside the jury room to say, "I don't care what the rest of you people say. I'm not changing my mind." *Id.* at 359. After learning of this information, and faced with an eleven to one deadlock, the trial court declared a mistrial upon the defendant's motion. *Id.* at 359-60. On appeal, we reasoned that once the trial court became aware that a juror may have failed to reveal information on the juror questionnaire that may have been disqualifying, it had an "independent obligation to *voir dire* the jurors individually" to determine whether the juror should have been disqualified. *Id.* at 361-62. Thus, we concluded that "under the unique circumstances of th[e] case, it would be unfair to subject the defendant to a new trial." *Id.* at 362.

Here, the record indicates that a juror may have been prejudiced against the defendant based upon her undisclosed history. The defendant argues that, pursuant to *Mello*, the trial court had an obligation to determine whether the jury was prejudiced, *id.* at 361-62, and to then "exhaust all reasonable alternatives to remove any jury taint before declaring a mistrial." *Gould*, 144 N.H. at 418. We disagree. Our decision in *Mello* was confined to the "unique circumstances" of that case, *Mello*, 145 N.H. at 362, and we decline to apply it beyond those circumstances.

The jury deadlock in this case presented an independent ground for mistrial separate and apart from any potential jury prejudice. Here, the trial court noted in informing the jury of the mistrial that there was no additional evidence to be had and that the jury had been deliberating almost as long as the trial itself. These facts set this case apart from *Mello's* "peculiar circumstances." *Id.* at 361.

 Potentially disqualifying information aside, the record supports a declaration of a mistrial based upon jury deadlock, and, thus, by manifest necessity, *State v. Hartford*, 132 N.H. 580, 584 (1989), which "prevents original jeopardy from terminating on that charge." *State v. Nickles*, 144 N.H. 673, 677-78 (2000). In determining whether the record supports declaration of a mistrial, a reviewing court should give the trial court great deference when a jury deadlocks. *Hartford*, 132 N.H. at 584. Because the jury deadlock itself created a manifest necessity, we cannot find under the State Constitution that the trial court erred in denying the defendant's motion to dismiss, thereby allowing retrial. Our holding in no way limits the *voir dire* requirement articulated in *Mello*.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Arizona v. Washington*, 434 U.S. 497, 509 (1978) (applying the manifest necessity standard and noting that "without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial"); *Hartford*, 132 N.H. at 584 (applying the manifest necessity standard to the trial court's determination of jury deadlock). Thus, we reach the same result under the Federal Constitution as we do under the State Constitution.

In sum, because the trial court erred in precluding the defendant from cross-examining the complainant regarding her past accusation, we reverse and remand for a new trial. The trial court's denial of the motion to dismiss is affirmed.

> *Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.