Hillsborough-southern judicial district
No. 2008-672

THE STATE OF NEW HAMPSHIRE

v.

JAMES KELLY

Argued: January 20, 2010
Opinion Issued: May 6, 2010

*Michael A. Delaney*, attorney general (*Stephen D. Fuller*, senior assistant attorney general, on the brief and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, James Kelly, appeals his conviction for violating a protective order, *see* RSA 173-B:9 (Supp. 2009), arguing that the Superior Court (*Nicolosi*, J.) erred in its answers to jury questions and by excluding evidence of a witness's allegedly false statements to police. We reverse and remand.

The jury could have found the following facts. The defendant and Elizabeth Kelly were engaged and cohabited until their relationship ended in February 2006. Their separation produced an ongoing custody dispute and prompted Elizabeth to seek a protective order against the defendant.

On February 21, 2006, the Nashua District Court issued a protective order that prohibited the defendant from going within 100 yards of where Elizabeth might be, including the house where she resided, unless accompanied by a police officer. The district court modified this order to require the defendant to provide Elizabeth, through counsel, a list of all business property he sought to retrieve from the residence.

On October 16, 2006, the defendant and his brother-in-law drove, in separate cars, from Massachusetts to Hudson. They both testified that they drove directly to the Hudson police station, and not past Elizabeth's residence. The defendant presented an officer with the protective order and asked him to accompany him to Elizabeth's residence to obtain his belongings. The officer agreed after hearing that Elizabeth was home.

Later that evening, the officer escorted the defendant to Elizabeth's residence, where they each parked on the side of the road approximately 100 yards from Elizabeth's house. The officer went to Elizabeth's side door to speak with her while the defendant waited in his car. When Elizabeth answered the door, the officer testified, "[s]he seemed excited" and told him she was just about to call the police. At trial, Elizabeth testified that she had seen the defendant drive past her house twice that evening, once when she arrived home between 5:00 and 6:00 p.m. and once just before the officer arrived. She stated she had memorized his car and license plate.

After hearing this information, the officer gave Elizabeth the protective order that the defendant had given him. Elizabeth responded that he had the incorrect order and gave him the amended protective order. The officer then walked to the defendant's car, and advised him that he could not remove his belongings that day. The defendant drove up the street, turned around in Elizabeth's driveway, and drove away. Subsequently, the defendant was charged, by complaint, with violating a protective order. Specifically, the complaint alleged that on October 16, 2006, the defendant committed "the crime of violation of a protective order and that [he] did knowingly violate a protective order . . . by driving within 100 yards of Elizabeth Kelly's residence."

At trial, the defense argued that Elizabeth was not credible. Two of Elizabeth's neighbors testified that they had not seen the defendant on October 16, 2006, until he arrived with the officer. The two neighbors, a father and daughter, had been working in the yard. The defense also argued that Elizabeth's testimony was incompatible with the police officer's testimony.

To impeach Elizabeth's credibility, the defendant moved *in limine* to permit cross-examination regarding five allegedly false statements Elizabeth had made to the police. Two statements concerned allegations that her former husband assaulted her in February 2003 during their divorce

proceedings and that a boyfriend assaulted her in May 2004. The other three concerned statements Elizabeth made to the police denying reported threats of suicide or suicide attempts in March 2003 and October 2005. The trial court ruled that the defense could not refer to the "statements she may have made to the police in connection with possible suicide attempts," but could ask Elizabeth whether she had given a false statement in 2003 or on other occasions. Defense counsel followed these instructions but renewed the motion *in limine* during the cross-examination of Elizabeth. The court allowed counsel to attempt to refresh Elizabeth's recollection with the police reports but barred counsel from impeaching her with the substance of the reports. The defendant was convicted as charged. This appeal followed.

I

■ We first address whether the trial court's response to three jury questions constructively amended the complaint to the defendant's prejudice. The defendant argues that he preserved this issue by making a motion for a new trial, citing *State v. Elliott*, 133 N.H. 759 (1990), and *State v. Johnson*, 130 N.H. 578, 586 (1988). In *Johnson*, we stated: "We agree that an amendment to an indictment . . . might constitute ground for a new trial, if the amendment surprises the defendant and this surprise prejudices his defense." *Johnson*, 130 N.H. at 586 (quotation omitted). We, however, did not address whether a motion for new trial would preserve this argument. Instead, we held that the trial court's jury instruction that allegedly amended the indictment did not prejudice the defendant in his ability to present his case. *Id.* In *Elliott*, the defendant contended that the State's proposed jury instruction in a felony case would impermissibly amend the indictment. *Elliott*, 133 N.H. at 762-63. In contrast, the defendant in the case before us did not object to the trial court's jury instructions or to the trial court's answers to the jury questions. He only filed a motion for a new trial.

■ The general rule is that "a contemporaneous and specific objection is required to preserve an issue for appellate review." *State v. Croft*, 142 N.H. 76, 80 (1997) (quotation omitted). We have held that an objection to jury instructions raised for the first time in a motion for a new trial is not timely. *Mailhot v. C & R Const. Co.*, 128 N.H. 323, 325 (1986); *see State v. Ainsworth*, 151 N.H. 691, 693 (2005) (finding necessary a contemporaneous objection to preserve a jury instruction issue for appellate review). Similarly, we believe that a contemporaneous objection is necessary to preserve a challenge to a trial court's answer to a jury question. This rule, based on "common sense and judicial economy," *Johnson*, 130 N.H. at 587, affords a "trial court an opportunity to correct an error it may have made,"

*Ainsworth*, 151 N.H. at 693. A contemporaneous objection is particularly appropriate where an alleged error involves a response to a jury question. Accordingly, our review is limited to plain error.

The plain error rule allows us to consider errors not brought to the attention of the trial court. *State v. Almodovar*, 158 N.H. 548, 553 (2009). However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.* For us to find error under the rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.*

During deliberations, the jury asked three questions to which the court responded. The first question was: "Are we to decide if Mr. Kelly came within 100 yards of Ms. Kelly or if he violated *any* stipulations of the protective order. For example not making an appt via the appropriate channels via the protective order?" The court answered: "The issue for you to decide is whether Mr. Kelly violated the protective order by coming within 100 yards of where Elizabeth Kelly may be." Second, the jury asked: "At what point did the police escort officially end?" The court responded: "This is a factual question which is for you as jurors to resolve if it is necessary for you to render a fair and just verdict." Third, the jury inquired: "Is charge based on 1st driveby only (w/out police) or entire chain of events (ie: police escorted visit, driveway turn-a-round, etc.)." The court answered: "You may consider all of the evidence that was admitted at trial in deciding whether the State has proven the elements of the crime beyond a reasonable [doubt]."

The defendant contends that the trial court's answers constructively amended the complaint to his prejudice by "expand[ing] the scope of the charge" to include the defendant's conduct during the police escort. The defendant believed that the complaint only charged him with violating the protective order by "driving past Elizabeth's house prior to the police escort." The State counters that the trial court's answers were appropriate and did not expand the scope of the complaint. "The response to a jury question is left to the sound discretion of the trial court." *State v. Poole*, 150 N.H. 299, 301 (2003) (quotation omitted). We review the trial court's answer to a jury question under the unsustainable exercise of discretion standard. *Id.*; *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

Here, the trial court's answer to the third jury question constructively amended the complaint to the defendant's prejudice. The complaint

alleged that the defendant committed "the crime of violation of a protective order and that [he] did knowingly violate a protective order . . . by driving within 100 yards of Elizabeth Kelly's residence" on October 16, 2006. The complaint, therefore, placed the defendant on notice that he could be prosecuted for any act of "driving within 100 yards of Elizabeth Kelly's residence" on October 16, 2006 in violation of the protective order as the State argues.

The complaint, however, must be read in conjunction with the parties' stipulation as to what the protective order provided. This stipulation read in pertinent part:

> That there was a protective order . . . in effect on October 16, 2006 which provided that . . . Defendant shall not go within 100 yards of where plaintiff may be; [and] Defendant shall not enter the premises and curtilage where the plaintiff resides, except when the defendant is accompanied by a peace officer and, upon reasonable notice to the plaintiff, is allowed entry by the plaintiff for the sole purpose of retrieving items specified by the Court . . . .

The protective order on its face permits a defendant to go within 100 yards of Elizabeth's residence to retrieve specified items as long as he is accompanied by a police officer. Here, the police officer accompanied the defendant to Elizabeth's residence, spoke with Elizabeth while the defendant waited in his vehicle, and then asked the defendant to leave because the defendant had not provided Elizabeth's attorney with a list of the items he sought to retrieve. The defendant complied and left promptly turning around in the driveway while the police officer stood in the yard. It was not a criminal act for the defendant to come within 100 yards of Elizabeth's residence with a police escort under the protective order.

The trial court, therefore, impermissibly amended the complaint when it told the jury to "consider all of the evidence that was admitted at trial in deciding whether the State has proven the elements of the crime beyond a reasonable [doubt]" in response to the jury's third question. The trial court's answer effectively expanded the scope of the charge to include the police escort and the defendant's turning around in the driveway.

■ The State argues that the defendant should have requested a bill of particulars or a clarification of the complaint if he did not know which acts were at issue. We agree that it may be good practice to ask for a bill of particulars if a defendant is unsure of the specific acts alleged. Indeed, "[t]he purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense and to enable him to prepare an intelligent defense." *State v. Dixon*, 144 N.H. 273, 275 (1999)

(quotation omitted). But we do not find the defendant's failure to request a bill of particulars fatal to his claim here as the State urges. When the protective order is read in conjunction with the complaint, no rational trier of fact could find that it was a criminal act for the defendant to turn around in Elizabeth's driveway with a police officer present. Further, as explained below, the defendant was prejudiced by the trial court's amendment. *See Poole*, 150 N.H. at 303 ("If the defendant was prejudiced by [a] constructive amendment, his failure to request a bill of particulars is irrelevant.").

Specifically, the trial court's amendment prejudiced the defendant in his ability to prepare his defense and to understand the charges against him. The defendant did not prepare a defense to the police escort and driveway turnaround. In his opening at trial, defense counsel argued that the defendant never violated the protective order because he never drove past Elizabeth's house. As the trial progressed, the defendant tailored his defense to rebut Elizabeth's claim that he drove by her house prior to the police escort. The defendant presented three witnesses, Elizabeth's two next-door neighbors and the defendant's brother-in-law, who all testified that the defendant never drove by Elizabeth's house the evening of October 16, 2006, prior to the police escort. During the cross-examination of the State's witnesses, the defendant also focused upon the two alleged earlier drive-bys. For example, defense counsel asked the police officer, "And your allegation — what you wrote in your arrest warrant is that Mr. Kelly had driven past [Elizabeth's residence]. Is that correct?" The officer replied, "Based on the witness [Elizabeth Kelly], yes." Finally, the defendant in his closing argument asserted that the restraining order did not include the police escort and driveway turnaround. The defendant stated:

> Let's talk about this pulling into the driveway. There's a restraining order in effect; don't dispute that. The restraining order says you can't come within 100 yards of [the residence], or Ms. Kelly . . . except when accompanied by a peace officer. . . . [The officer] was there in the driveway when Mr. Kelly pulled in, he pulled out and he left with a peace officer. I submit to you that the order allows him to be there with a police officer; that is permissible.

Defense counsel then argued reasons why the defendant turned around in the driveway, which were primarily safety-related. By permitting the jury to consider "all of the evidence," including the police escort and driveway turnaround, the trial court's response to the jury's questions prejudiced the defendant.

This case is similar to *Poole*, where we held that the trial court's answer to a jury question impermissibly amended the complaint to the defendant's

prejudice. *Poole*, 150 N.H. at 303. In *Poole*, the complaint alleged that the defendant committed the crime of simple assault on December 22, 2001, at 7:00 p.m., but at trial the defendant presented an alibi for this time frame. *Id.* at 300-01. During deliberations, the jury asked, "[I]f we think the crime happened, but *not* necessarily on that date, are we permitted to consider this line of reasoning?" *Id.* at 301. The trial court replied that "the date is not an element of the crimes charged"; therefore, "you may find the defendant guilty of the crime with which he is charged, even if you find that the state was mistaken as to the specific date or time." *Id.* This answer prejudiced the defendant because in preparing his defense he had relied upon the date specified in the complaint. *Id.* at 302. Similarly, here the defendant relied upon the complaint and protective order to not include the act of driving by Elizabeth's house with a police escort. The trial court, therefore, erred in responding to the jury's third question and impermissibly amended the complaint.

■ We further conclude that the four elements of the plain error rule have been met in this case. First, there was error. Second, the error is plainly evident when the complaint is read with the stipulated protective order. Third, the error affected the defendant's substantial rights because the error prejudiced the outcome of the proceeding. *See State v. Lopez*, 156 N.H. 416, 425 (2007) ("[T]o satisfy the burden of demonstrating that an error affected substantial rights, the defendant must demonstrate that the error was prejudicial, *i.e.*, that it affected the outcome of the proceeding."). Based upon the jury's questions, the jury may well have convicted the defendant for an act that was not criminal. Fourth, because the trial court amended the complaint to include an act neither charged in the complaint, nor itself a criminal act, to allow the defendant's conviction to stand would seriously affect the fairness and integrity of judicial proceedings.

## II

Because the issue may arise again upon remand, we will address whether the trial court erred in excluding evidence of Elizabeth Kelly's prior allegedly false statements to the police. The defendant contends that he should have been permitted to cross-examine Elizabeth about five statements that she gave to police between 2003 and 2005: three involving alleged threats of suicide and two relating to accusations of abuse. In March 2003 and February 2005, the police received reports that Elizabeth had threatened or attempted to commit suicide — reports that Elizabeth denied. In February 2003, Elizabeth filed a police report claiming that her former husband assaulted her and burned her arm with a lamp. The police investigated this allegation and concluded that it was false, according to

defense counsel. In 2004, Elizabeth claimed that her "boyfriend," who met the same description as her ex-husband, had assaulted her, but refused to name the "boyfriend."

The trial court ruled that defense counsel could not refer to the statements concerning the possible "suicide attempt[s]" and barred defense counsel from asking about the 2004 assault investigation. The trial court also ruled:

> [T]here would be no reference to the [2003 assault] investigation, but for one document that I released . . . because it reflected an omission on the part of Ms. Kelly that she was not truthful with the police during an interview about her association with other men. And that that was the only area of cross-examination that I [am] going to allow [concerning the 2003 assault investigation] and it was going to be done without reference to the general context of the investigation.

The trial court further clarified that "the cross-examination would be you were interviewed by the police back in 2003 and during the course of that interview you made a false statement about that." Defense counsel could also "ask [Elizabeth] if there were any other times . . . when she was interviewed by the police that she lied."

Defense counsel followed these instructions and asked Elizabeth if she gave inconsistent statements to the police about her relationship with another man in February 2003. Elizabeth admitted she had but explained that she "didn't feel it was [the police's] business." Defense counsel then asked, "Have there been other instances where you've been less than truthful to law enforcement?" Elizabeth responded, "No." Based upon this response, the defendant renewed his request to cross-examine Elizabeth about her alleged false statements to police and moved to impeach her with the substance of these reports. The trial court denied both these motions, allowing counsel to refresh Elizabeth's recollection with the police reports but prohibiting any questions about their substance.

■ ■ A trial court has broad discretion to determine the scope of cross-examination or the admissibility of evidence, and we will not upset its ruling absent an unsustainable exercise of discretion. *State v. Miller*, 155 N.H. 246, 249 (2007). To prevail under this standard, the defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. *Id.*

New Hampshire Rule of Evidence 608(b) states, in pertinent part, that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than con-

viction of crime as provided in Rule § 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

"Although Rule 608(b) permits a cross-examiner to inquire into conduct that is probative of the witness's character for truthfulness or untruthfulness, the examiner must generally take the answer as the witness gives it." *State v. Kornbrekke*, 156 N.H. 821, 824 (2008) (quotation omitted). Rule 608(b) forbids the cross-examiner from introducing "extrinsic evidence such as calling other witnesses, to rebut the witness's statements." *State v. Hopkins*, 136 N.H. 272, 276 (1992). The ban on extrinsic evidence is to avoid a trial within a trial; in other words, to avoid the litigation of collateral matters. *Miller*, 155 N.H. at 249.

When exercising its discretion under Rule 608(b), a trial court must also consider Rule 403. *Kornbrekke*, 156 N.H. at 824-25. As the reporter's notes to Rule 608(b) explain, "[T]he overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury . . . ." N.H. R. Ev. 608 Reporter's Notes; *see* N.H. R. Ev. 403 (stating "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of . . . needless presentation of cumulative evidence"). In assessing the probative value of evidence, the court should consider:

> (1) whether the testimony of the witness is crucial or unimportant; (2) the extent to which the evidence is probative of truthfulness or untruthfulness; (3) the extent to which the evidence is also probative of other relevant matters; (4) the extent to which the act of untruthfulness is connected to the case; (5) the extent to which the circumstances surrounding the specific instances of conduct are similar to the circumstances surrounding the giving of the witness's testimony; (6) the nearness or remoteness in time of the specific instances to trial; (7) the likelihood that the alleged specific-instances conduct in fact occurred; (8) the extent to which specific-instances evidence is cumulative or unnecessary in light of other evidence already received on credibility; and (9) whether specific-instances evidence is needed to rebut other evidence concerning credibility.

*Miller*, 155 N.H. at 252-53 (quotations and ellipses omitted). Additionally, when examining the danger of unfair prejudice where the witness is not the

defendant, "the court may consider whether the jury will develop a bias against the witness because of the Rule 608(b) evidence," and "whether the jury will give the evidence too much weight." *State v. Brum*, 155 N.H. 408, 413 (2007). Finally, the court may consider whether the cross-examination will subject the witness to harassment and undue embarrassment or result in a time-consuming, distracting mini-trial. *Kornbrekke*, 156 N.H. at 825.

We agree with the defendant that Elizabeth's testimony, and, therefore, her credibility, was crucial to the State's case. Elizabeth was the only eye-witness who testified to seeing the defendant drive by her house on the evening of October 16, 2006, prior to the police escort. We also agree that all of these alleged statements were made less than four years prior to the charged offense, a "time period . . . not so remote as to eliminate probity." *Id.* at 826 (finding false allegations of assault made seven years prior to the conduct at issue still probative of defendant's character for truthfulness). Further, although she has never recanted her statements, there is evidence that Elizabeth "lied to the police" at least once. A police investigation deemed her February 2003 assault claim unfounded. Finally, the 2003 alleged abuse accusation occurred under substantially similar circumstances — the stress of a family law dispute. Permitting cross-examination about the 2003 accusation may have shown that Elizabeth had a bias, motive or prejudice in accusing the defendant of violating the protective order. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) (noting that courts have demonstrated a greater willingness to entertain specific attacks on credibility "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand" over general attacks on credibility); *see also Miller*, 155 N.H. at 255-56.

But other *Miller* factors weighed against admitting the statements. The other four statements would not reveal any biases, prejudices or ulterior motives. *See id.* Permitting cross-examination as to these statements would only serve as general attacks on credibility. We are less willing to permit cross-examination that creates the general inference that "because the victim made a false accusation in the past, the instant accusation is also false." *Id.* at 256 (quotation omitted). Further, the trial court permitted limited cross-examination. The trial court allowed the defendant to question Elizabeth about one misstatement she made to police during the 2003 investigation and to ask if she had lied on other occasions to police. Therefore, further cross-examination could have been cumulative. *See Miller*, 155 N.H. at 253.

Moreover, even if these statements were probative of Elizabeth's character for truthfulness, the trial court could have weighed the probative

value of these statements against the risk of prejudice and determined them to be too prejudicial. We agree that questioning Elizabeth about her prior police statements, particularly as related to her alleged suicide attempts, could have subjected her to "harassment and undue embarrassment." *Miller*, 155 N.H. at 253 (quotation omitted). It may also have led to confusion of the issues and "time consuming and distracting minitrials" on whether Elizabeth actually lied previously — not the point at issue here. *Id.* (quotation omitted). Therefore, we conclude that the trial court did not unsustainably exercise its discretion when it denied defense counsel's motions to question Elizabeth further about the five previous statements she gave to police.

The defendant also contends that he should have been allowed "to impeach Elizabeth with [her] prior false statements after she testified she had never lied to the police." Specifically, he asserts that "[b]y claiming that she had never made any false statements to the police Elizabeth opened the door to cross-examination about prior statements that contradicted her testimony." We review the trial court's decision on the admissibility of evidence for an unsustainable exercise of discretion. *See State v. White*, 155 N.H. 119, 123 (2007).

The defendant confuses the "specific contradiction" branch of the opening the door doctrine, *see State v. Wamala*, 158 N.H. 583, 589 (2009), with Rule 608(b). Under the specific contradiction branch, "when one party has introduced admissible evidence that creates a misleading advantage . . . the opponent is then allowed to introduce previously suppressed or otherwise inadmissible evidence to counter the misleading advantage." *Wamala*, 158 N.H. at 589. "The rule is intended to prevent a party from successfully excluding evidence favorable to his opponent, and then selectively introducing evidence for his own advantage, without allowing the opponent to place the evidence in proper context." *Lopez*, 156 N.H. at 422. These concerns do not apply here. Here, defense counsel on cross-examination asked Elizabeth whether "there [had] been . . . instances [other than the 2003 assault investigation] where you've been less than truthful to law enforcement?" Elizabeth answered, "No." The State did not ask this question on direct examination or "open the door." *See* 1 G. DIX ET AL., MCCORMICK ON EVIDENCE § 49, at 232-33 (Kenneth S. Broun ed., 6th ed. 2006).

Rule 608(b) governs here. Under Rule 608(b), defense counsel may cross-examine a State witness about "conduct that is probative of the witness's character for truthfulness or untruthfulness," but must "take the answer" the witness gives on cross-examination. *Kornbrekke*, 156 N.H. at 824 (quotation omitted). Extrinsic evidence is not allowed. N.H. R. EV.

608(b). Here, the trial court permitted the defendant to refresh Elizabeth's memory with the police reports, but limited defense counsel's cross-examination to the parameters it laid out prior to trial. We cannot say that the trial court unsustainably exercised its discretion in not allowing further cross-examination or impeachment.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.